### THE STATE v. HIXON.

QUO WARRANTO.—Relation admitted that respondent was regularly elected, qualified and commissioned sheriff of Johnson county; but avers that afterward, and before the expiration of his term of office, by act of the legislature in creating a new county, and changing the boundary lines of Johnson, respondent's place of residence, which was in Johnson, became, and was included within the territory of the new county, whereby respondent became a non-resident of Johnson, and that, by reason thereof, his office became forfeited. *Held* on demurrer: That the non-residence of itself did not work a forfeiture, and the relation, to be sufficient, should have alleged such acts done by respondent as absolutely worked a forfeiture of office.

PETITION FOR QUO WARRANTO.

*Montgomery, Attorney General,* for the State.
*Cravens and May,* for Defendant.

We submit :

*First.* This court has no jurisdiction of the subject of the action. *See State vs. Ashley et als.,* 10 *Ark.* 280.

*Second.* The rule should disclose the grounds upon which the information was granted, which it does not do. *See Tidds Practice, 3d American, from the 9th Lond. Ed., vol.* 1*., page* 657; *Chap.* 2*, Civil Code.*

*Third.* That the defendant, under the Constitution and laws of the land, is entitled to hold the office until January 1, 1873. *See Sec.* 16, *Art.* 15; *Const; and Secs* 3 *and* 18, *same Art.*

*Fourth.* That this suit should not have been brought in the county of Pulaski. *See Acts Gen. Assembly,* 1871, *amendatory of Sec.* 484, *Civ. Code.*

BENNETT, J.—On the 14th day of December, 1871, at the suggestion of the Attorney General, a rule to show cause was awarded against Pleasant Hixon, the defendant, why a writ of *quo warranto* should not be issued against him.

On the 8th day of January, 1872, a demurrer to the information of the Attorney General was filed.

There are four causes assigned in the demurrer. The first

three are all to the effect that this court has no jurisdiction; the second is that the information shows no cause of action.

The question of jurisdiction has been fully settled in the cases of *Price et al. vs. Page, Treasurer*, 25 *Ark.*, 557; *State vs. Johnson*, 26 *Ark.* 281. Nothing further need be said on that point.

As to the question, "That the information shows no cause of action," the relation sets out the fact that the respondent did, on the 22d day of March, 1871, and has ever since usurped the office of sheriff of Johnson county, and he claims to have, hold, assume and enjoy the same without lawful authority.

The relation then admits that the respondent was regularly elected, commissioned and qualified as such sheriff, at an election held in 1868. But it avers that on the 22d day of March, 1871, there was passed by the General Assembly, and approved by the Governor, an act entitled "An act to establish the county of Sarber, and for other purposes," and that, by virtue of this act, the original lines of Johnson county were changed, and that the place of residence of said Pleasant Hixon was, on said 22d day of March, 1871, has ever since been, and is now, in that portion of the territory formerly embraced in the said county of Johnson, but is now within the boundaries of the county of Sarber, and that he, Pleasant Hixon, is not a resident of Johnson county.

From the above recital of allegations, we are led to ask, "Does it work a forfeiture of the office of a sheriff of a county, when, by an act of the Legislature, the lines of his county are so changed as to place his residence within the limits of another county?"

The Constitution of this State, by implication at least, authorizes the General Assembly to create new counties, and to change or alter the boundaries of old ones. The only limit to this power is a prohibition against creating a new county of less, or the reduction of an old county to less than an area of six hundred square miles. The Legislature, in creating the county of Sarber, did not transcend its legitimate powers, as far as appears in this case.

The relation of the Attorney General shows that the respondent, Hixon, was elected, regularly commissioned and qualified to the office of sheriff of Johnson county, in 1868, and does not allege that his term of office has expired by limitation. But it is asserted that non-residence has worked a forfeiture of the same. .

The Constitution of 1868 provides for the election of the State, executive, judicial and legislative officers, naming the office by special designation, and for "all county officers" in general, leaving the people to determine what county offices were to be filled. This same instrument also provides that "all laws not in conflict with this Constitution, shall remain in full force until otherwise provided by the General Assembly, or until they expire by their own limitation."

The Constitution of 1868, failing to specially define the duties of a sheriff, or declaring what acts performed or what duties unperformed, will work a forfeiture, and create a vacancy, it is necessary to go behind it and examine the statute and constitutional laws left in force regulating this office.

The Constitution of 1836 was much more full, complete and definite in relation to designating "county officers," and defining their duties than the Constitution of 1868.

*Sec.* 17, *Art.* 6, says: "The qualified voters of each county shall elect one sheriff, etc., * * * * for the term of two years. They shall be commissioned by the Governor, reside in their respective counties during their continuance in office."

*Chap.* 160, *Sec.* 1, *Gould's Digest*, says: "The qualified voters of each county in this State shall, on the first Monday in August, 1846, and every two years thereafter, elect one sheriff, who shall hold his office for the term of two years, and until his successor be elected and qualified."

The Legislature, acting under the Constitution of 1836, did not deem it necessary to specially declare, in the enactment, that it was requisite for a sheriff to reside in the county, inasmuch as it was a constitutional requirement that he should do so. The clause in the present Constitution, continuing all

laws, not conflicting with it, in force, would not only continue the law itself, but all its incidents with it. _Chapter_ 160, _Gould's Digest_, in relation to sheriffs, must, therefore, be construed in connection with that part of the Constitution of 1836, as relates to the same subject matter.

We find it then necessary that a sheriff should reside in the county in which he is elected, during his continuance in office, by the laws now in force. Even if there was no positive enactment, common sense and reason would say sheriffs must reside in the counties where they are performing the duties and exercising the functions of that office. A sheriff is an officer of great antiquity, and now, as anciently, the custody of the county is in his charge, and keeping, the peace of these communities, in a great measure, is in his hands; with power to summon _posse comitatus_, to apprehend felons, rioters and other public offenders, to execute writs and process, it would be a violent presumption to presume a non-resident, who, perhaps, had no interest in common with the other citizens, should have this great power conferred upon him. Neither the letter nor the spirit of our law will warrant such a conclusion.

But the question arises: Can a sheriff be deposed from office until charged before some competent tribunal, and offered an opportunity to disprove the alleged neglect of official duty?

Mr. Justice Walker, in the case of the _State vs. Carnall_, 10 _Ark._ 162, says : "The summary mode which has been resorted to, in this instance, however it might tend to facilitate the collection of the revenue, by stimulating the officer to a prompt discharge of his duty, must yield to the constitutional rights of the citizen and officer; not that he has a right to retain his office for a moment after he has violated the law, but that before he shall be deprived of it, he shall be heard, in defense, before a competent tribunal."

This decision was rendered in a case where a sheriff failed to return and file, in the office of the clerk of his county, the original assessment list of taxable property, as required by

26

law. The statute provided that such a failure forfeited his office, and upon proper certification of that failure, the Governor should declare his office vacant. All of which was done. Yet the court says, "a sheriff could not be deposed from office until charged before some competent tribunal, and offered an opportunity to disprove the alleged neglect of duty. The privilege is so reasonable and just in itself, indeed so indispensably necessary to the protection of the rights of the citizen, that independent of the safeguards thrown around him by the Constitution, we would reluctantly see them invaded."

Upon general principles, without constitutional authority, we find, in order to create a vacancy in an office, it requires an *act done*, or the *exercise of power* to work a forfeiture and determine the title to an office: 2 *Blk.* 156; 4 *Kent Com.* 127. When the organic law is silent as to the mode of declaring a forfeiture, and what shall be deemed a vacancy, the Legislature possesses the inherent power to prescribe the means to ascertain the same, but the justice of the common law will not permit an investigation of facts which may be followed by the loss of a right, or by the infliction of a penalty to be conducted *ex parte*: 4 *Blk. Com.* 282, 1 *East* 638; 2 *Kent Com.*, 297.

We, however, find that it is provided in *Sections* 12 *and* 13, *Chapter* 160, *Gould's Digest*: "If any sheriff shall fail or refuse to perform any duties required by law to be performed by him, he shall be deemed guilty of a misdemeanor in office, and on conviction thereof, shall be removed from office."

"When any sheriff shall be found guilty of a misdemeanor in office, the court before whom the trial may have been had, shall declare the office of such sheriff vacant."

It will thus be seen that the legislature has furnished a complete and adequate redress for any omission or commission upon the part of a sheriff. Giving the officer, in the spirit of the common law, a tribunal before whom he may be heard before he can be summarily deposed from office.

But it may be alleged, that this is a proceeding to try the right of Hixon to the office of sheriff of Johnson county.

*Quo Warranto* is the proper remedy to try the title to an office. To test the validity of the election, commission and qualification of an officer, but when these are all admitted, as is the case before us, there is nothing to test unless it be the expiration of the term of office, or the forfeiture of it by some act done by the incumbent. It is not alleged by the Attorney General that Hixon's term of office has expired, even if it was, we judicially know that it has not. The only question then in the case is, has Hixon been guilty of such an act as works a forfeiture of his office. The operation of the act must, *ipso facto*, work an actual forfeiture. If it does not, but is merely a misdemeanor in office, and the law providing the mode in which a vacancy may be declared, *quo warranto* will not lie. *Lord Bruce's case*, 2 *Strange*, 819.

Now what is the respondent guilty of as alleged in the relation of the Attorney General? That he is a non-resident; not made so by his own act, but by the Act of the Legislature. Nowhere in the Constitutions of 1836 or 1868, or in the statutes do we find that this act in and of itself works a *forfeiture*. If there is no forfeiture there can be no vacancy. Non-residence is not of so high a grade of official offense, as *ipso facto*, to incur the penalty of forfeiture of office.

A person who persists in exercising the duties of a sheriff of a county for an unreasonable time, while he remains a non-resident of it, may perhaps be found guilty of a misdemeanor in office, but it is not until conviction thereof, before a competent tribunal, can he be removed from his office.

After admitting the regularity of the election, commission and qualification of Hixon as sheriff, in order to have made the relation sufficient in law, the Attorney General should have alleged such acts done by him as absolutely worked a forfeiture of his office. The acts done do not do this, therefore the relation is imperfect.

Demurrer sustained.