# THE STATE ex rel. ISAAC A. LETCHER v. ELBRIDGE M. DEARING, Judge.

### In Banc, December 24, 1913.

1. **PROHIBITION: Motion for Judgment on Pleadings: Issues of Fact.** Where, upon the coming in of respondent's return to a writ in prohibition, petitioner moves for judgment, the facts as stated in the return are taken as true, if in any wise they differ from those stated in the petition.

2. **QUO WARRANTO: Accepting Railroad Pass: Constitutional Provision: Self-Enforcing.** The provision of the Constitution (Sec. 24, art. 12), declaring that no railroad company shall

grant a free pass or ticket to a county officer and that the acceptance of such pass or ticket by any such officer shall be a forfeiture of his office, is not self-enforcing. An officer cannot be deprived of his office without some kind of a judicial hearing, and the Constitution provides no method for such a hearing.

3. ————: ————: **Forfeiture of Office: Conviction.** Under Sec. 4814, R. S. 1909, a county officer must be convicted in a criminal prosecution in the circuit or criminal court before there can be a judgment of forfeiture of his office for accepting a railroad pass. He cannot be removed by a court of equity upon an information in the nature of a *quo warranto* under Sec. 2631, R. S. 1909, until he has been convicted, for until then he cannot be said to have usurped or intruded into, or to unlawfully hold, his office.

4. ————: ————: **Removal from Office.** Where the statute provides a method of forfeiture of office for certain offenses, as a general rule a court of equity will not exercise its jurisdiction in a *quo warranto* proceeding to declare a forfeiture.

5. ————: ————: ————: **Constitutional Method.** The Constitution itself, when read as a whole, and especially when section 7 of article 14, declaring that "the General Assembly shall, in addition to other penalties, provide for the removal from office of county, city, town and township officers, on conviction of wilful, corrupt or fraudulent violation or neglect of official duty," is considered, seems to contemplate that there must be a conviction of the officer, by a trial in the circuit or criminal court, of a violation of a statute, before a judgment of forfeiture of office can be entered.

## Prohibition.

WRIT ALLOWED.

*Edward T. Eversole* and *James F. Green* for relator.

(1) Prohibition will lie to prevent the exercise of unauthorized power, even in a case where the inferior court has jurisdiction of the subject-matter of the action. State ex rel. v. Reynolds, 209 Mo. 178; Morris v. Lenox, 8 Mo. 252; Railroad v. Wear, 135 Mo. 256; State ex rel. v. Scarritt, 128 Mo. 338; High on Ex.

Legal Rem., sec. 389; Spelling on Ex. Legal Rem., sec. 1741; Thomas v. Mead, 36 Mo. 247. (2) The proceeding in *quo warranto* against relator should not be entertained by the circuit court until a trial is had in the criminal case. Sec. 4814, R. S. 1909; State v. Wilson, 30 Kan. 669; High on Ex. Legal Rem., secs. 617, 618, 637, 643; Gracie v. St. Louis, 213 Mo. 395; State ex rel. v. Reynolds, 158 S. W. 671; State ex rel. v. Adams, 101 Mo. App. 475. (3) A judgment of ouster in the *quo warranto* proceeding would deprive relator of his office, and he would have no adequate remedy by appeal. 32 Cyc. 1466; People v. Stevenson, 98 Mich. 218; Welch v. Cook, 7 How. Prac. 282; State v. Wilson, 121 N. C. 480; Olmstead v. Distilling Co., 73 Fed. 44; Jayne v. Drorbaugh, 63 Iowa, 711; Allen v. Church, 101 Iowa, 116; State v. Judge, 14 La. Ann. 240; State v. Woodson, 128 Mo. 517; State v. Ragsdale, 59 Mo. App. 591. (4) The mere fact that a railroad pass might be held by relator would not constitute a violation of the Constitution or the statutes. Smith v. Railroad, 24 N. Y. 227; Dempsey v. Railroad, 146 N. Y. 294; Emerson v. Railroad, 75 Atl. 525; City v. Railroad, 93 Pac. 48; Commonwealth v. Gleason, 69 S. E. 448.

*W. A. Cooper* and *H. B. Irwin* for respondent.

(1) *Quo warranto* proceedings is the proper remedy to question the right to hold and exercise public office. 32 Cyc. 1415; Lee v. State, 49 Ala. 43; Hill v. Shasta Co., 63 Cal. 174; Parsons v. Drummond, 150 Ind. 203; State v. Sadler, 25 Nev. 131; Nichols v. MacLean, 101 N. Y. 526; Gilroy's Appeal, 100 Pa. St. 5; Grant v. Chambers, 34 Tex. 573; State v. Raisler, 133 Wis. 672. (2) No criminal prosecution is a prerequisite to an action by *quo warranto*. State ex inf. v. Delmar, 200 Mo. 34; 32 Cyc. 1417, 1424, 1462; 23 Am. & Eng. Enc. Law, 632; State ex rel. v. Oil Co., 218 Mo. 350; State ex rel. v. Social Club, 169 Mo. App. 137;

Royall v. Thomas, 28 Gratt. (Va.) 130; Royall v. Thomas, 26 Am. Rep. 335; Morgan v. Vance, 4 Bush (Ky.), 323. (3) Section 24 of article 12 of the Constitution is self-enforcing. The rule is that prohibitive and restrictive provisions are self-executing and may be enforced by the courts independent of any legislative action. 8 Cyc. 754, 756 to 758; Householder v. Kansas City, 83 Mo. 488; State ex rel. v. Taylor, 224 Mo. 482; Shively v. Lankford, 174 Mo. 549; Royall v. Thomas, 28 Gratt. (Va.) 130; Royall v. Thomas, 26 Am. Rep. 335; Morgan v. Vance, 4 Bush (Ky.), 323.

GRAVES, J.—Original action in prohibition. Relator seeks to prohibit the respondent, as judge of the Washington County Circuit Court, from now proceeding to try him upon a certain information in the nature of *quo warranto* lodged against him by the prosecuting attorney of Washington county. Relator, Letcher, is the duly qualified collector of revenue of Washington county. The information in the nature of *quo warranto* seeks to oust him from that office for reasons thus stated in the petition:

"That the said Isaac A. Letcher during his said term of office as collector of the revenue aforesaid, did at the county of Washington and State of Missouri, unlawfully accept from the Missouri Pacific Railway Company, a railroad corporation organized under the laws of the State of Missouri, and engaged in owning and operating a line of steam railroad in the State of Missouri, a free pass, which said free pass entitled the said Isaac A. Letcher to be carried as a passenger without charge over the line of said railway company in the State of Missouri, and did use the same in traveling as a passenger on said railroad in the State of Missouri during his said term of office.

"That the said Isaac A. Letcher on the —— day of January, 1913, and during his term of office as aforesaid of said county, did unlawfully accept from the

railway company aforesaid, a pass and ticket at a discount, which entitled him to be carried as a passenger over the line of said railway company in the State of Missouri, and thereafter and during his said term of office did use same in traveling as ·a passenger on said railway in the State of Missouri.

"That the said Isaac A. Letcher during his said term of office as collector of the revenue aforesaid, did at the county of Washington and State of Missouri, unlawfully accept from the St. Louis, Iron Mountain & Southern Railway Company, a railroad corporation organized under the laws of the State of Missouri, and engaged in owning and operating a line of steam railroad in the State of Missouri, a free pass, which said free pass entitled the said Isaac A. Letcher to be carried as a passenger without charge over the line of said railway company in the State of Missouri, and did use the same in traveling as a passenger on said railroad in the State of Missouri during his said term of office.

"That the said Isaac A. Letcher on the —— day of January, 1913, and during his term of office as aforesaid of said county, did unlawfully accept from the railway company aforesaid a pass and ticket at a discount which entitled him to be carried as a passenger over the line of said railway company in the State of Missouri, and thereafter and during his said term of office did use same in traveling as a passenger on said railway in the State of Missouri.

"Wherefore, the said Isaac A. Letcher by the acceptance and use of the passes and tickets aforesaid or any or either of them, has by virtue of section 24 of article 12 of the Constitution of the State of Missouri, forfeited his said office of collector of the revenue of the county of Washington and State of Missouri, and is now unlawfully holding said office and still does usurp at the county of Washington and State of Missouri, without legal right so to do, the rights,

liberties, privileges and franchises of said office, and threatens to continue so to do, in contempt of and to the great damage and prejudice of the authority of the State of Missouri aforesaid.

"Whereupon the said prosecuting attorney in this behalf prosecutes for the State of Missouri, and prays the consideration of the court here in the premises, and that due process of law may be awarded against the said Isaac A. Letcher in this behalf to make answer to the State of Missouri, and show by what authority he claims to have, use and enjoy the rights, liberties, privileges and franchises aforesaid."

Relator unsuccessfully demurred to this information, and respondent was threatening him with a trial thereon, when the proceeding was stopped by our order to show cause. Such steps as were taken in the *quo warranto* case were taken at the March term of said court. By relator's petition here it further appears that the prosecuting attorney of Washington county, at said March term, 1913, of that court, also filed a criminal information against relator, wherein relator was charged with a violation of section 4814, R. S. 1909, in accepting a free railroad pass. Upon this information the relator here was arrested, but the cause was continued until the August term, 1913, for trial. The *quo warranto* case was docketed for hearing June 16, 1913, at the March term. In his application for our writ the relator thus succinctly states his position:

"Petitioner further states that respondent, as judge of the circuit court, has no jurisdiction to proceed to the trial of the cause on information in the nature of *quo warranto,* which is now pending against him in the circuit court of Washington county, Missouri, and said respondent judge is precluded from entertaining said proceeding in *quo warranto,* and from entering any judgment therein against relator; that relator is entitled as of right to a trial by jury in the

cause which has been continued until the August term of the circuit court of Washington county, and respondent is without jurisdiction to entertain or hear said proceeding by *quo warranto,* which is set for hearing on the 16th of June, for the reason that under the laws of Missouri, to-wit, section 4814, it is provided that only upon conviction of the offense named in said section can a forfeiture of office be declared, and only after conviction can petitioner be ousted from the office which he holds as collector of the revenue of Washington county, and he therefore avers that respondent should be precluded and restrained from hearing and further considering said *quo warranto* against him until there has been a trial and judgment in the case filed by said prosecuting attorney against your petitioner, alleging a violation of section 4814, Revised Statutes 1909; that said contemplated proceedings and trial by respondent on the 16th of June, 1913, and before a hearing of the case against your petitioner at the August term, 1913, is in excess of the jurisdiction of respondent; and, if said cause is tried on the 16th of June, 1913, your petitioner will be precluded and prevented from obtaining a right guaranteed him by the Constitution of the State of Missouri, to-wit, a trial by a jury on the question of his guilt or innocence as to the same matter upon which respondent proposes and intends to try him, as above stated, on the 16th of June, 1913.

"Petitioner avers that he is without adequate remedy in the premises to prevent the exercise of jurisdiction by respondent other than by prohibition to be issued by this honorable court.

"Wherefore petitioner prays that the court will issue against respondent its writ of prohibition restraining and preventing him from hearing or taking further action in said cause against your petitioner, set for trial on Monday, June 16, 1913, and that upon final hearing said prohibition may be made absolute."

State ex rel. v. Dearing.

The return of respondent concedes the material facts involved in the case, and upon the filing of the return relator moved for judgment. In this situation of the case, we borrow the facts from the return, if, in any particular, they differ from those stated by relator. The case is one of law, rather than of fact, and the necessary facts will be more fully stated in the course of the opinion. This sufficiently states the case. ·

I. The return of the respondent admits the pendency of the criminal action under section 4814, Revised Statutes 1909. It admits the pen-

**Quo Warranto:
Criminal
Prosecution.** dency of the *quo warranto* proceeding, and that a trial thereof was being pressed in advance of the criminal case. That the relator was holding the office of county collector is likewise admitted. That both informations· strike at the same offense is admitted. With allegations in the petition here to this effect, and with these admissions in the return, the remainder of the return may well be treated, as counsel have treated it, as a demurrer to the petition. The case is thus left in shape for a disposition of the legal points. These in order.

II. Respondent relies solely upon the language of our Constitution, which he says is self-executing. Section 24 of article 12 of the Constitution reads:

"No railroad or other transportation company shall grant free passes or tickets, or passes or tickets at a discount, to members of the General **Constitution:
Self-Enforcing.** Assembly, or members of the Board of Equalization, or any State, or county, or municipal officers; and the acceptance of such pass or ticket, by a member of the General Assembly, or any such officer, shall be a forfeiture of his office."

We do not concur in this view of the matter. The Constitution provides no method for the determination of the forfeiture. An officer cannot be deprived of his office without some kind of a judicial hearing, and

the Constitution provides no method for such a hearing. The constitutional provision is broad enough to be the foundation of a legislative act prescribing a method of determining the forfeiture, but is not so far self-executing as to render legislation upon the question unnecessary. Removal from office by information in the nature of *quo warranto,* or by the original writ of *quo warranto* as at common law, was never grounded upon the acceptance of a railroad pass. But aside from this thought, we find that the Legislature, by warrant of the authority given by the constitutional provision, has enacted section 4814, Revised Statutes 1909, which reads:

"Any member of the General Assembly of the State of Missouri, or member of the State Board of Equalization, or any State, judicial, county or municipal officer, who shall accept, use or travel on any free passes or tickets, or passes or tickets at a discount, mentioned in the preceding sections, shall be deemed guilty of a misdemeanor, and punished by a fine of not less than fifty dollars nor more than five hundred dollars for each offense, and upon conviction thereof, forfeit his office, and if there be no provisions made by law for the removal of such officer by impeachment, the court trying the cause shall adjudge the defendant to have forfeited his office and declare the same vacant: *Provided,* that no court other than the circuit court or criminal court of record shall have power to adjudge any such office to be forfeited and vacant."

Here we have a clear statutory provision for a determination of the question of forfeiture. That the

**Forfeiture of Office: Prior Connection.** Legislature was giving a specific procedure for this particular class of cases is made evident by the precise language of the statute. Note the precise language of the statute. Note the proviso to the section.

It locates the jurisdiction to determine the forfeiture in a court having jurisdiction over criminal cases and

none other. Not only so, but it requires a *conviction*, before there can be a judgment of forfeiture. Nor is it unreasonable to think that the Legislature thus designedly hedged a judgment of official forfeiture. Good reasons may be readily seen. [State ex rel. Selleck v. Reynolds, 252 Mo. 369.] It must not be overlooked that the question to be tried in the case is whether or not there has been a *forfeiture* of the office. In this it differs from the statutory civil action by information in the nature of *quo warranto*. *Vide* section 2631, Revised Statutes 1909. That section so far as pertinent reads:

"In case any person shall usurp, intrude into or unlawfully hold or execute any office or franchise, the Attorney-General of the State, or any circuit or prosecuting attorney of the county in which the action is commenced, shall exhibit to the circuit court, or other court having concurrent jurisdiction therewith in civil cases, an information in the nature of a *quo warranto*, at the relation of any person desiring to prosecute the same; and when such information has been filed and proceedings have been commenced, the same shall not be dismissed or discontinued without the consent of the person named therein as the relator; but such relator shall have the right to prosecute the same to final judgment, either by himself or by attorney."

In a case like the one at bar it cannot be said that relator has usurped, intruded into, or unlawfully held his office, until there has been a trial and judgment of forfeiture. It stands conceded that he is rightfully in the office, unless he has forfeited that right by conduct subsequent to his induction into office. The question then is, who shall try the matter of forfeiture, a court of equity, or the courts named in the statute? If the constitutional provision is not self-executing, as we have held, then it is clear that the forfeiture must be determined in the method pointed out by the stat-

ute. In other words, that the judgment of forfeiture can only follow a conviction under the criminal charge.

In State ex rel. v. Wilson, 30 Kan. 661, the Kansas court has taken our view of the case, i. e., that neither common law nor statutory civil action in *quo warranto* will lie, when there is a specific statute prescribing the procedure by which forfeiture of office shall be determined. In that case it is said:

"Section 104 of the first-class city act also provides for removals of the mayor and other city officers for misconduct in office, upon conviction in any court of competent jurisdiction; and section 213, in connection with sections 207, 208 and 209 of the act relating to crimes and punishments, provided for forfeiting the office of all officers who shall be found guilty of any official misdemeanor or misconduct in office, in any court of competent jurisdiction. The procedure, however, to enforce the provisions of said sections 104 and 213 is criminal in its nature, and not civil, as the procedure in *quo warranto* is. The statutes themselves expressly show this. It is possible that, after a forfeiture under said section 213, *quo warranto* would lie. But there has not yet been any such forfeiture. Now, after the Legislature has had the entire subject-matter of forfeitures of office and removals from office under consideration, and has evidently intended to cover the entire ground, is it possible to suppose that the Legislature intended that there might still be some other ground for forfeiture than those mentioned in the statutes, or some other manner of removal from office than that mentioned in the statutes? We would think not." And again, in the same case the following:

"Mr. High, in his work on Extraordinary Legal Remedies, lays down the doctrine that generally *quo warranto* will not lie where there is another plain and adequate remedy. [High on Extra. Legal Rem., secs. 616, 617, 618, 637, 643, 645.] Counsel for plaintiff, however, claim that Mr. High is mistaken, but after a

careful and pretty thorough examination of the authorities we are convinced that Mr. High's statement of the rule is substantially correct. [State v. Marlow, 15 Ohio St. 114; State v. Taylor, 15 Ohio St. 137; State v. Hixon, 27 Ark. 398; Com. v. Leech, 44 Pa. St. 332; People v. Hillsdale, etc., Turnpike Co., 2 Johns. (N. Y.) 190; Neely v. Wadkins, 1 Rich. (S. C.) Law, 42; Lord Bruce's Case, 2 Strange, 819; The King v. Ponsonby, 1 Ves. Jr. (Ch.) 1; The King v. Heaven, 2 Durnf. & E. 772, 776.] In Lord Bruce's case the court says: 'If it is an actual forfeiture he is out, you may choose another; if not, it is but a misdemeanor and a *quo warranto* will not lie. Besides, the modern opinion has been that a power of amotion is incident to the corporation.' In the case of The King v. Ponsonby, which in the lower court was a proceeding in *quo warranto* against a person holding the office of free burgess of the corporation of Newtown, charging him with having usurped the office, it was held that the power of amotion had been expressly granted to the corporation, and therefore that *quo warranto* would not lie against a member until such power of amotion had been exercised. In the case of The King v. Heaven it is said by ASHURST, J.: 'Whenever a person has been once duly elected into corporate office and forfeits it by misconduct, his amotion by the corporation is a previous and necessary step to be taken before this court will grant an information in the nature of *quo warranto* against him, for when a corporator neglects the duties of his office the corporation should first take cognizance and deprive him, and then it may be properly brought before this court.' The case was decided in accordance with this opinion. These three English cases last cited were with reference to officers of municipal corporations. The American authorities also seem to sustain the doctrine as enunciated by Mr. High. After an examination of the authorities we have arrived at the conclusion that, as a general rule, a court having

the power to exercise jurisdiction in *quo warranto* proceedings will not exercise its jurisdiction where some other plain and adequate remedy exists. This, we think, was always the law.''

III. We are more thoroughly impressed with the foregoing views after an examination of other statutes of the State relating to *forfeitures* of office.

**Legislative Scheme: Other Statutes.** There seems to be a clear legislative scheme which runs through all cases of this character, and that scheme is not to permit a forfeiture judgment until after a conviction in a criminal charge, wherein the guilt or innocence of the defendant upon the charge going to the forfeiture has been determined. In other words the State must have a verdict of guilty upon the act which creates the forfeiture, before a judgment of forfeiture can be entered. Upon a trial of that issue the accused is entitled to a jury if he so desires. Such seems to be the general policy of Missouri. Thus by sections 4385, 4386 4387, and 4388, Revised Statutes 1909, certain acts of sheriffs, deputy sheriffs, jailers, etc., are made misdemeanors and in some instances higher grade crimes, but section 4389, Revised Statutes 1909, reads:

"Every officer who shall be convicted of any of the offenses specified in the last four preceding sections shall forfeit his office.''

It will be noted that a conviction is required before the judgment of forfeiture. Section 4405, Revised Statutes 1909, reads:

"Any person, being a candidate for election to any office of honor, trust or profit, in this State, who shall offer or promise to discharge the duties of such office for a less sum than the salary, fees or emoluments of said office, as fixed by the laws of the State, or who shall promise to pay back or donate to any public or private interest any portion of such salary, fees or emoluments, as an inducement to voters at such elec-

tion, shall on conviction thereof be deemed guilty of a misdemeanor, and shall be fined in a sum of not less than fifty dollars nor more than five hundred dollars, or imprisonment in the county jail for a period of not less than ten days nor more than six months, or by both such fine and imprisonment, and shall in addition forfeit the office to which he may have been elected at such election.''

Again we have the judgment of forfeiture following a conviction. We also have section 4413, Revised Statutes 1909, which reads:

''Every person who shall be convicted of any of the offenses mentioned in the preceding sections of this article shall be forever disqualified from holding any office of honor, trust or profit under the Constitution and laws of this State, and from voting at any election; and every officer who shall be convicted of any official misdemeanor or misconduct in office, or of any offense which is by this or any other statute punishable by disqualification to hold office, shall, in addition to the other punishment prescribed for such offenses, forfeit his office.''

The latter clause is the one apropos here. Again we have, as to one already rightfully in office, a conviction required, before there can be a judgment of forfeiture. Going further we have a statute which uses the exact proviso used in section 4814, supra, the one involved in this case. Such statute is section 10203, Revised Statutes 1909, and reads:

''If any public officer, whether State, county, city, town or township officer, shall be intoxicated while in the performance of any official act or duty, or shall become so intoxicated as to be incapacitated to perform any official act or duty at the time and in the manner required of him in the discharge of the duties of his office, he shall be deemed guilty of a misdemeanor in office, and punished by imprisonment in the county jail not exceeding six months or by a fine of not less than

fifty dollars, or by both such fine and imprisonment; and if there be no provisions made by law for the removal from office of such officer by impeachment, the court shall adjudge the defendant to have forfeited his office, and declare the same vacant, and the same shall be filled as provided by law for filling such vacancy: *Provided,* that no court other than the circuit or criminal court of record shall have power to adjudge any such office to be forfeited and vacant."

Note again the judgment of forfeiture is postponed until after a criminal conviction is had. Article 2 of Chapter 104, Revised Statutes 1909, relates to "Fees, Payment and Disposition Of." There are a great number of sections in the article, but at the close thereof we have section 10736, which reads:

"Every person violating the provisions of this article shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined for each offense in any sum not less than fifty dollars nor more than one thousand dollars, and conviction thereunder shall work a forfeiture of his office."

Conviction before forfeiture of office is the keynote of this section. There are no doubt other statutes, but these we gather by a hasty research. They bespeak, as with one voice, a fixed State policy, and that policy is a conviction in a criminal case, before judgment of forfeiture in cases belonging to the class to which this case belongs. Of course the Legislature could have had these investigations by civil action, as it has done in other classes of cases, but it is not for the court to legislate.

IV.  But in addition to this, the Constitution itself, when read as a whole, would seem to contemplate that there must be a conviction of a violation of law, before a judgment of ouster.

**Other Constitutional Provisions.**  We must read all provisions of the Constitution together, and from them all gather our conclusions. We have set out above the

provision of the Constitution relied upon by the State. We should not, however, overlook sections 5 and 7 of article 14.  Section 5 reads:

"In the absence of any contrary provision, all officers now or hereafter elected or appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be duly elected or appointed and qualified."

Section 7 reads:

"The General Assembly shall, in addition to other penalties, provide for the removal from office of county, city, town and township officers, on conviction of wilful, corrupt or fraudulent violation or neglect of official duty."

So that it would appear that the idea of a conviction before a judgment of forfeiture is in the constitutional as well as the statutory scheme of the State. These two constitutional provisions underwent a thorough discussion by LAMM, J., in State ex rel. v. Sheppard, 192 Mo. 497.

Upon the whole we are satisfied that respondent has no power to hear the information involved in this case and our provisional writ should be made permanent.  It is so ordered.  All concur, except *Woodson* and *Brown, JJ.,* who dissent.