STATE OF MISSOURI upon the information of ROY MCKITTRICK, Attorney General, Relator, v. CARL F. WYMORE, Prosecuting Attorney of Cole County.—119 S. W. (2d) 941.

Court en Banc, September 28, 1938.

*Roy McKittrick,* Attorney General, and *Franklin E. Reagan,* Assistant Attorney General, for relator; *Edward C. Crow* of counsel.

102

*John G. Madden, James E. Burke* and *Madden, Freeman & Madden* for respondent.

GANTT, J.—Original action in *quo warranto* to determine the question of respondent's title to the office of prosecuting attorney of Cole County. The information is conventional. In substance, it alleges that respondent was duly elected to said office and qualified on January 1, 1937; that it was his duty to prosecute criminal actions in said county; that he willfully and corruptly failed, neglected and refused to prosecute certain criminal actions therein specified; that by said conduct he thereby forfeited said office; that notwithstanding said conduct and forfeiture he usurped said office and continues to unlawfully exercise the rights and powers of the same. Wherefore, relator prays that respondent be required to show by what authority he claims title to said office; that he be adjudged guilty of usurping the power and authority of the same, and that said office be declared vacant.

On respondent's motion we now consider the jurisdiction of this court in *quo warranto* to determine the question presented by the information, reserving to respondent the right to plead, should we rule the question of jurisdiction against him.

I. Respondent contends that this court is without jurisdiction in *quo warranto* to determine said question.

The Supreme Court has jurisdiction to issue writs of *quo warranto* and to hear and determine the same. [Sec. 3, Art. IV, Const.] It is beyond the power of the Legislature to interfere with this jurisdiction, "and it will not be intended that a legislative enactment was designed to take such jurisdiction away, although such enactment should confer another and distinct remedy upon some inferior court or board." [State ex inf. v. Equitable Loan & Inv. Co., 142 Mo. 325, 337, 41 S. W. 916; State ex inf. v. Vallins, 140 Mo. 523, 529, 41 S. W. 887.]

It is admitted that *quo warranto* is the proper remedy to determine title to office. The writ is not directed against the individual claiming the office. It is directed against his right to hold the office. It is not an action in the interest of any individual. It is an action to protect the public against usurpation. [22 Stan. Ency. of Procedure, p. 25.] The dominant issue in *quo warranto* is title. It proceeds on the theory that the office has been forfeited by an act of misconduct on the part of the official. On the other hand, removal concedes title and proceeds on the theory that the official either has not "forfeited by the act forbidden" or has committed a criminal offense and subjected himself to punishment and forfeiture of the office on conviction. The courts are without authority to create and declare a forfeiture of office. Absent forfeiture at common law, the forfeiture can be created and declared only by either Constitution or valid legislative enactments. The rule is stated by standard texts as follows:

"*Quo warranto* will also lie for the purpose of ousting an incumbent whose title to the office has been forfeited by misconduct or other cause. And in such a case it is not necessary that the question of forfeiture should ever before have been presented to any court for judicial determination, but the court, having jurisdiction of the *quo warranto* proceeding, may determine the question of forfeiture for itself. The question must, however, be judicially determined before he can be ousted. 'And if the alleged ground for ousting the officer is that he has forfeited his office by reason of certain acts or omissions on his part, it must then be judicially determined, before the officer is ousted, that these acts or omissions of themselves work a forfeiture of the office. Mere misconduct, if it does not of itself work a forfeiture, is not sufficient. The court has no power to create a forfeiture, and no power to declare a forfeiture where none already exists. The forfeiture must exist in fact before the action of *quo warranto* is commenced.'" [Mechem Public Officers, sec. 478, p. 308.]

"When the court has jurisdiction in *quo warranto* proceedings it may oust an incumbent from an office, which he is holding without right, although the question of the right or of forfeiture, if that is in the case, has never before been presented to any court for judicial

determination. The court which has original jurisdiction in *quo warranto* may determine the question of right or the question of forfeiture for itself, unless the statute provides that forfeiture shall follow a criminal prosecution and sentence, and if the act complained of does not *ipso facto* create a forfeiture, and is only a misdemeanor in office on account of which the law provides the manner in which the vacancy is to be declared, it is held that *quo warranto* will not lie." [17 Ency. of Pleading & Practice, p. 400.]

"Where a statute requires an officer to keep his office open for transaction of official business, during certain hours of a particular day, and provides that his failure so to do, unless caused by sickness, 'shall forfeit his office;' a forfeiture on that ground can be enforced only by proceedings in the nature of a *quo warranto*, and cannot be made part of the judgment, on conviction of a misdemeanor for neglecting the duties of his office. Where a statute provided, that no councilman of any municipality should become surety for the treasurer, secretary, or other officer of the municipality, and that, for a violation of this provision, he should forfeit his office, and be guilty of a misdemeanor, and on conviction should be fined, etc.; and another statute provided that the councils of Philadelphia should judge and determine the qualifications of their members; it was held, that where a member of the council became a surety for the city treasurer, this forfeited his office as councilman; that such forfeiture arose from the unlawful act, and not only upon conviction of misdemeanor; that the power of the council to impeach, try, and remove a member for the offense, was not incompatible with the judicial power to oust a usurping officer; and that their neglect to take such proceedings was not a bar to legal proceedings to declare a forfeiture." [Throop's Public Officers, sec. 429, pp. 416, 417.]

"*Quo warranto*, or information in the nature of *quo warranto*, is the remedy or proceeding whereby the State inquires into the legality of the claim which a party asserts to an office or franchise, and to oust him from its enjoyment if the claim be not well founded, or to have the same declared forfeited, and recover it, if, having once been rightfully possessed and enjoyed, it has become forfeited for misuser or non-user." [2 Extraordinary Remedies, Spelling, sec. 1765, p. 1516.]

"In many states, statutes have been passed providing special remedies for ouster from public office of incumbents who through misconduct are deemed to have forfeited the same. However, at common law, and also under the statutory substitutes for *quo warranto*, proceedings in *quo warranto* are appropriate remedies for such a purpose, unless the special ouster proceedings are made, or held, exclusive. In all such cases of ouster from office, the misconduct complained of must be such as warrants a forfeiture of the office, and the alleged misconduct, even if criminal, may be established in the *quo warranto*

proceeding itself, without the necessity of a prior conviction." [22 Stan. Ency. of Procedure, sec. 7, p. 34.]

"Where *quo warranto* is an appropriate remedy, the fact that some other remedy may exist will not, when public interests are concerned, or, in other words, when the State or the public at large is affected by the alleged wrong, in the absence of a statute making such other remedy exclusive, prevent the use, on the part of the State of the extraordinary remedy of *quo warranto.*" [22 Stan. Ency. of Procedure, p. 18.]

Respondent argues that the jurisdiction of this court in *quo warranto* is limited by Section 7, Article XIV of the Constitution and legislation thereunder. The said section of the Constitution follows:

"The General Assembly shall, *in addition to other penalties,* provide for the removal from office of county, city, town and township officers, on conviction of willful, corrupt or fraudulent violation or neglect of official duty. Laws may be enacted to provide for the removal from office, for cause, of all public officers, not otherwise provided for in this Constitution." (Italics ours.)

This section (except the last sentence thereof) and Section 3, Article VI of the Constitution authorizing this court to issue writs of *quo warranto* were adopted at the same time. Respondent points to no word in either Section 7, Article XIV or other sections of the Constitution limiting this court's jurisdiction in *quo warranto* against county, city, town and township officers.

Furthermore, it should be noted that said Section 7 of the Constitution does not direct the enactment of legislation providing for removal incident to conviction of a criminal offense. On the contrary, it directs the enactment of legislation providing for removal on conviction of official misconduct. The Legislature understood the constitutional mandate and enacted Article II, Chapter 68, Revised Statutes 1929. It also should be noted that said Article II does not declare official misconduct to be a criminal offense. The first section of said article is 11202, which follows:

"Sec. 11202. OFFICER SHALL FORFEIT OFFICE AND BE REMOVED, WHEN.—Any person elected or appointed to any county, city, town or township office in this state, except such officers as *may* be subject to removal by impeachment, who *shall* fail personally to devote his time to the performance of the duties of such office, or who *shall* be guilty of any willful or fraudulent violation or neglect of any official duty, or who *shall* knowingly or willfully fail or refuse to do or perform any official act or duty which by law it is his duty to do or perform with respect to the execution or enforcement of the criminal laws of the state, *shall thereby forfeit his office, and may be removed therefrom in the manner hereinafter provided.*" (Italics ours.)

The method by which county, city, town and township officers may

be removed under said article, is provided in Sections 11203-11209, inclusive.

Respondent argues that the remedy provided by this statute is an exclusive remedy against respondent for misconduct. On reading the article it will be noted that the words "may" and "shall" are used many times in the several sections. They were used advisedly and must be given their usual and ordinary meaning. It is the general rule that in statutes the word "may" is permissive only, and the word "shall" is mandatory. If so, said remedy is not exclusive, for it is provided in Section 11202 that the offending official *"may* be removed in the manner hereinafter provided." In other words, under the statute, the offending official "forfeits by the act forbidden" (State ex inf. v. Ellis, 325 Mo. 154, 161, 28 S. W. (2d) 363) and is subject to any remedy available to the people. The said Section 11202 having created and declared a forfeiture "by the act forbidden," the Legislature could not and did not attempt to limit the jurisdiction of this court in *quo warranto*. It is without authority to do so.

Furthermore, our jurisdiction in *quo warranto* was challenged in State ex inf. v. Ellis, supra. In that case we considered an amendment to the Constitution (Sec. 13, Art. XIV), which follows:

"Any public officer or employee of this State or of any political subdivision thereof who shall, by virtue of said office or employment, have the right to name or appoint any person to render service to the State or to any political subdivision thereof, and who shall name or appoint to such service any relative within the fourth degree, either by consanguinity or affinity, *shall thereby forfeit his or her office or employment."* (Italics ours.)

The amendment provided no remedy for enforcement. Even so, we ruled that it was self-enforcing; that it pronounced a forfeiture upon commission of the act condemned, and that *quo warranto* was a proper remedy under said forfeiture.

Furthermore, we ruled in Manker v. Faulhaber, 94 Mo. 430, 6 S. W. 372; State ex rel. v. Walbridge, 119 Mo. 383, 24 S. W. 458; State ex rel. v. Wells, 210 Mo. 601, 109 S. W. 758; State ex rel. v. Sheppard, 192 Mo. 497, 91 S. W. 477, that the remedy provided in Sections 11203 to 11209, inclusive, is not exclusive. However, the question of this court's jurisdiction in *quo warranto* was not involved in those cases.

In the Manker case we ruled that Section 11203 et seq., did not provide an exclusive remedy and that city officials under charter authority could be removed from office by the city council.

In the Walbridge, Wells and Sheppard cases it also was ruled that said remedy was not exclusive. The Sheppard case was an original action in prohibition in this court. On complaint filed by the prosecuting attorney, the circuit judge threatened to suspend the circuit clerk from office pending his trial on a charge of murder. In the

course of the opinion we stated that Section 7, Article XIV was not a limitation on the authorities of the Legislature to enact other forfeitures and penalties.; that.it directed the enactment of certain legislation that did not provide "that the Legislature shall do nothing more." We also stated that "the entire section (Sec. 7, Art. XIV) means that the Legislature must provide for the removal of an officer on conviction, but it leaves the question of other penalties solely within the realm of legislative enactment, and so it has been held." Of course, the question of other forfeitures and penalties is "solely within the realm of legislative enactment." But this statement was not made with reference to the jurisdiction of this court in *quo warranto,* which question was not involved in the case. We also stated that unless the circuit judge could "put his finger upon the statute" sustaining a suspension of the circuit clerk, he was without authority to do so. Of course, this statement was made with reference to the proceeding before the circuit court on the complaint of the prosecuting attorney. It had no reference to the jurisdiction of this court in *quo warranto.*

It also is argued that more than one remedy inevitably results in jurisdictional conflicts. The different legislative remedies with reference to removal of county, city, town and township officers for misconduct have existed for many years. It has caused neither embarrassment nor conflict.

Respondent also argues that Section 11202 created a "new right" and for that reason the remedy prescribed is exclusive. There is law of that kind. However, respondent's briefs are full of admissions that at common law officers were removed for misconduct. If so, said section created no "new right." The said admissions are sustained by authorities as follows: Bacon's Ab. Title Officers, M. Vol. 7, pp. 321, 322; 5 Coke, par. 9, p. 89; Willcock Municipal Corporation, 14 L. L. 152, sec. 716; Willcock Municipal Corporation, 14 L. L., p. 149, sec. 704; Rex v. Wells, 4 Burrows, 1999, 2007; *Quo Warranto* Informations, Book 2, 55 L. L., p. 114; Willcock Municipal Corporation, 14 L. L., p. 250, sec. 348. Absent the creation of a "new right," the remedy prescribed is cumulative. [17 Ency. of Pleading & Practice, p. 423; 22 Stan. Ency. of Procedure, p. 715.]

Respondent cites cases as follows: Bakersfield News v. Ozark County, 338 Mo. 519, 92 S. W. (2d) 603, 605; State ex rel. v. Wurdeman, 309 Mo. 408, 414, 274 S. W. 407; State ex rel. v. Morehead, 256 Mo. 683, 691, 165 S. W. 746; State ex rel. v. Francis, 88 Mo. 557; State ex inf. Atty. Gen. v. Brunk, 326 Mo. 1181, 34 S. W. (2d) 94, l. c. 97; State ex rel. v. Dearing, 253 Mo. 604, 162 S. W. 618.

The first three cases did not involve the question of this court's jurisdiction in *quo warranto.* In the Bakersfield case we merely stated that a county officer may be removed under Section 11202 et seq.

The Wurdeman case was an original action in this court in pro-

hibition. The prosecuting attorney of St. Louis County was under investigation by the grand jury. In this situation the circuit judge appointed a temporary prosecuting attorney "with full authority to discharge in full the office he temporarily fills." We ruled that the circuit judge was without authority to make the appointment and stated that Section 11202 et seq., afforded full provision for the removal of prosecuting attorneys on conviction of misconduct. It does afford a complete remedy. But that opinion did not rule that it was an exclusive remedy. The question of other remedies, including the remedy in *quo warranto,* was not involved in the case.

In the Morehead case the opinion was in two divisions. In the first division it ruled that the county court was without authority to remove a member of the county highway board. An examination of the files in this court discloses that said division disposed of the only issue presented by the record. It follows that all of division two of said opinion is *obiter dictum* and without value as authority. However, we will assume that the question of remedies for removal of officials was an issue in said case, and consider the statement relied upon by respondent in the second division of the opinion, which statement follows: "In the absence, therefore, of particular statutes, the method prescribed and the reasons assigned in Section 10204 et seq. (R. S. 1909) supra, are the limits of authority for the removal of members of the classes of officers therein specified."

Of course, that statement is not the law, for said sections are not "the limits of authority" as against general statutes authorizing city authorities to remove offending officials. Furthermore, in that case the question of this court's jurisdiction in *quo warranto* was not an issue.

In the Francis case (an action in *quo warranto*) it was contended by relator that he received more legal votes for mayor than respondent. He prayed that respondent be ousted from said office. Respondent denied the allegations of the information. At the trial relator asked for a writ directing the recorder of voters to permit an inspection of the ballots, which was refused. Judgment for respondent and relator appealed.

The only question for review was the ruling on relator's petition for an inspection of the ballots. We ruled that an action in *quo warranto* only determined that the person holding the office is or is not a usurper. We also ruled that under the Constitution relator was not entitled to an inspection of the ballots in an action in *quo warranto,* and the judgment was affirmed.

In the Brunk case the title of Brunk to the office of State Treasurer was challenged in *quo warranto* under a statutory forfeiture. He contended that the statute was unconstitutional. We so ruled on the ground that the sole power of removal of a State Treasurer was lodged in the General Assembly by the Constitution. The provi-

sion for impeachment is a limitation on legislative and judicial power. There is no statutory or constitutional provision fixing a sole method for removal of county, city, town and township officers.

The above cited cases do not sustain the contention of respondent that the remedy provided in Section 11203 et seq., is an exclusive remedy against respondent.

The case of State ex rel. v. Dearing, 253 Mo. 604, 162 S. W. 618, is cited by respondent. It was an original action in this court in prohibition. Relator was county collector and sought to prohibit the circuit court from proceeding in *quo warranto* to determine the question of his title to the office. The information charged that he unlawfully accepted a free pass from a railroad in violation of Section 24, Article XII, an amendment to the Constitution, which follows:

"No railroad or other transportation company shall grant free passes or tickets, or passes or tickets at a discount, to members of the General Assembly, or members of the Board of Equalization, or any State, or county, or municipal officers; and the acceptance of such pass or ticket, by a member of the General Assembly, or any such officer, shall be a forfeiture of his office."

The opinion ruled that the amendment was not self-enforcing. It conceded that the amendment was "broad enough" to authorize the Legislature to provide a method for enforcement. It stated that the amendment was "not so far self-executing as to render legislation on the question unnecessary." This statement is not understandable. The amendment is either self-enforcing or it is not self-enforcing. It also stated that removal from office in *quo warranto* "was never grounded upon the acceptance of a railroad pass." This statement is meaningless. It also stated that *quo warranto* was a suit in equity. It is an action at law. [State ex inf. v. Hall et al., 228 S. W. 1055, 1057; State ex inf. v. Bright, 298 Mo. 335, 347, 250 S. W. 599.]

The opinion then directed attention to Section 4814, Revised Statutes 1909, enacted after the adoption of the above constitutional amendment. Under said section the acceptance of a free pass is a misdemeanor and conviction forfeited the office. In other words, the Legislature presumed to amend the constitutional amendment by requiring a conviction before forfeiture. The opinion then eulogized the statutes providing for forfeiture on conviction as being the legislative policy of the State. In doing so it ignored the fact that the people did not approve of such policy, and for that reason adopted the self-enforcing amendment to the Constitution prohibiting officeholders from accepting free passes. The rule is stated in State ex inf. Norman v. Ellis, 325 Mo. 154, l. c. 160, 28 S. W. (2d) 363, as follows:

" 'It is within the power of those who adopt a constitution to make some of its provisions self-executing, with the object of putting it

beyond the power of the Legislature to render such provisions nugatory by refusing to pass laws to carry them into effect. . . .

" 'Constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed.' . . .

" 'A constitutional provision designed to remove an existing mischief should never be construed as dependent for its efficacy and operation on legislative will.' " [12 C. J., pp. 729, 730.]

The Dearing opinion then directed attention to Section 1618, Revised Statutes 1929, with reference to *quo warranto* in circuit courts. In that section it is provided that the attorney general or circuit or prosecuting attorney may proceed in the circuit court against any person usurping, intruding into or unlawfully holding or executing any office. On consideration of said section, the said opinion ignored the words "unlawfully . . . execute." It then ruled that the county collector could not be proceeded against in *quo warranto* until he had been convicted under Section 4814, Revised Statutes 1909. In so ruling it cited State ex rel. v. Wilson, 30 Kan. 661. The opinion in that case is not authority for the opinion in the Dearing case. In the Wilson case the mayor of Topeka was proceeded against in *quo warranto* for misconduct in office. It was ruled that under the Kansas statute the mayor did not forfeit until convicted of a crime. However, in the course of the opinion it was ruled as follows:

"The Supreme Court has ample jurisdiction to oust any person from office who is holding the same without any sufficient right thereto; and this, whether the office has been usurped, or whether the incumbent's term of office has expired by lapse of time, or whether the incumbent has forfeited his right to hold the office any longer by reason of some official misconduct on his part. And we think this court has jurisdiction to so oust the incumbent from office where he is holding the same without right, although the question of right to hold the office, or the question of forfeiture, if that is in the case, has never been before presented to any court for judicial determination. This court may determine the question of right or the question of forfeiture for itself. [State v. Allen, ante; The State v. Graham, ante; The Commonwealth v. Walter, 83 Pa. St. 105.] But of course before this court can oust an officer from his office it must be judicially determined that he has no right to hold the same. And if the alleged ground for ousting the officer is that he has forfeited his office by reason of certain acts or omissions on his part, it must then be judicially determined, before the officer is ousted, that these acts or omissions of themselves work a forfeiture of the office. Mere misconduct, if it does not of itself work a forfeiture, is not sufficient. [Cleaver v. The Commonwealth, 34 Pa. St. 283; Brady v. Howe, 50

Miss. 624, 625; Lord Bruce's Case, 2 Strange, 819; The King v. Ponsonby, 1 Ves. Jr. (Ch.) 1, 7; The People v. Whitcomb, 55 Ill. 172, 176; High on Extraordinary Legal Remedies, sec. 618.] The court has no power to create a forfeiture, and no power to declare a forfeiture where none already exists, The forfeiture must exist in fact before the action of *quo warranto* is commenced. [See authorities above cited, and The State v. Hixon, 27 Ark. 398, 402.]"

The case of State ex rel. v. Foster, 32 Kan. 14, was an original action in the Supreme Court in *quo warranto* against Foster, a prosecuting attorney. In that case respondent cited the Wilson case, 30 Kan. 661. It was ruled that the Wilson case was without application for the reason it dealt with the conduct of a city official and that the statute with reference to said official provided for forfeiture on conviction of a crime. On the other hand, the Foster case dealt with a county official and the applicable statute provided that the official "forfeited by the act forbidden." Thus it appears that the Wilson case does not sustain the opinion in the Dearing case.

In effect, we overruled the Dearing opinion in State ex inf. v. Ellis, 325 Mo. 154, 28 S. W. (2d) 363. That opinion "has not a single peg on which to stand." It has suspended for many years the enforcement of the constitutional amendment against the acceptance of free passes. We now overrule said opinion from beginning to end. Respondent concurs in overruling said opinion, for, in his reply brief, he stated "respondent does not contend and has never contended that criminal conviction is a prerequisite to *quo warranto.*"

Respondent cites many cases of other jurisdictions. We have considered said cases with reference to the statutes and constitutions of said jurisdictions. It will be sufficient to state that said cases either ruled questions not controverted or ruled the question herein presented under statutes and constitutions differing from the statute and constitution of this jurisdiction. For instance, in State v. Hixon, 27 Ark. 398, the action was in *quo warranto* against a sheriff. There was neither a constitutional nor legislative enactment creating and declaring a forfeiture. In this situation it was ruled that Hixon did not forfeit his office until convicted of a misdemeanor in office.

In Speer v. Wood, 128 Ark. 183, the action was in prohibition challenging the jurisdiction of the circuit court to suspend a prosecuting attorney pending prosecution under an indictment. In Arkansas the prosecuting attorney is a state officer and it was ruled that the sole remedy was impeachment.

In State ex rel. v. Bozarth (Okla.), 29 Pac. (2d) 579, the Attorney General alleged that Bozarth was a district judge; that he had been convicted of obtaining money under false pretenses and that he had appealed the case. In this situation the Attorney General prayed the Supreme Court to prevent Bozarth from performing the duties of his office under its constitutional power of superintending

control over inferior courts. The Supreme Court ruled that it was without authority to grant the petition.

In State ex rel. v. McLain (Ohio), 50 N. E. 907, the action was in *quo warranto* against a sheriff and a mayor. It was provided by statute that the sheriff could be removed on conviction of a crime. Likewise, it was provided by statute that a mayor could be removed by a proceeding in the probate court. In other words, no forfeiture was declared by either the Constitution or valid legislation.

In Commonwealth v. Benn (Pa.), 131 Atl. 253, the Governor, with the advice and consent of the Senate, appointed Benn a member of the Public Service Commission. Later he made an order removing him under the Constitution which provided that "appointed officers . . . may be removed at the pleasure of the power by which they shall have been appointed." It was ruled that the Governor in making the appointment was a mere agent of the Legislature and that the Legislature was "the power appointing Benn." It was then ruled that a statute with reference to the removal of members of a commission was the exclusive remedy.

In Lowe v. Commonwealth, 50 Ky. 237, a jailer had been removed by the county court under a statute providing for removal. It was ruled that the county court could not remove him because the Constitution had provided methods of removal as follows: (1) impeachment, and (2) removal upon conviction of a crime.

It follows that this court has jurisdiction to determine the title of respondent to the office of prosecuting attorney of Cole County.

II. Respondent next contends that Sections 11203 et seq., offer a plain and adequate remedy and for that reason *quo warranto* will not lie.

The question was considered in Manker v. Faulhaber, 94 Mo. 430, 442, 6 S. W. 372. In that case the intention of the Legislature in enacting the different remedies for the removal of officials for misconduct was under consideration. In the course of the opinion it was ruled as follows:

"On the contrary, their intention evidently was that such power, where it had been granted to administrative authorities of municipalities, should remain there, and as municipalities came under the general laws of incorporations provided for that purpose, each, to whatever class it might belong, should have the same power vested in the authorities charged with the administration of its affairs; a policy to be commended as wise and salutary since without such power, incapable, dissipated, or fraudulent officials might imperil and bankrupt the municipal government in the sight and knowledge of the authorities to whose guardianship its interests had been committed, and who would remain powerless to check summarily the career of such official, compelled to 'lay on their oars' until he had worked his

will, and until the slow-recurring terms of the circuit court afforded an opportunity for his removal after all the mischief had been done and the injury irreparable.''

Furthermore, in State ex rel. v. Walbridge, 119 Mo. 383, l. c. 393, 24 S. W. 457, we also ruled as follows:

''Surely nothing can more conduce to the good government and welfare of the city than that it should annex 'other penalties' (than those enacted by the general laws of the State) for the punishment of its own officers, than that incompetent or unworthy officers should be removed in a more summary way than that afforded by the method of procedure provided in Section 7127 and its associate sections (Sec. 7127, and associate sections is now Sec. 11202, R. S. 1929.)''

In State v. Guinotte, 156 Mo. 513, 527, 57 S. W. 281, we also ruled as follows: ''An adequate remedy is a remedy which is equally beneficial, speedy and sufficient.''

It also follows that respondent's motion to quash the information herein is overruled and he is granted ten days to plead from the date of filing this opinion. *Tipton, C. J., Hays, Douglas* and *Lucas, JJ.*, concur; *Leedy, J.*, concurs in result in separate opinion in which *Tipton, C. J.*, and *Ellison, J.*, concur.

LEEDY, J. (concurring).—I. I concur in the result reached in the principal opinion. As I understand respondent's contention with respect to the issue of the exclusiveness of the statutory remedy for his removal from office, under allegations of the information, it is based upon constitutional limitations, and is this: That the Constitution delegates to the General Assembly the exclusive authority to provide for removals from office (''The General Assembly shall, in addition to the other penalties, provide for the removal from office of county, city, town and township officers on conviction of willful, corrupt or fraudulent violation, or neglect of official duty.'' Art. XIV, Sec. 7), and the General Assembly, pursuant to, and under the compulsion of that mandate, has enacted a statutory procedure therefor (Sec. 11202 et seq.), which is exclusive, and hence *quo warranto* will not lie. Or, as stated in the brief, ''Under the constitutional provision (Art. XIV, Sec. 7) the General Assembly in mandatory terms is directed to provide for the removal of certain public officers from office; and when the General Assembly, under this mandate and delegation of power, specifies the procedure for such removals, the statutory remedy is as much a part of the organic law as if it were written in terms in the Constitution.'' █ But the difficulty with respondent's position is that the constitutional mandate relied on, and under which the scheme for removal of public officers was enacted by the Legislature, was, I think, withdrawn when the people adopted Amendment 18 proposed by the Constitutional Convention of 1922-23, which was submitted at a special election held February

26, 1924. The official publication showing the amendments proposed by that convention, together with the accompanying "Address to the People," and form of official ballot, promulgated by the convention, shows, at page 70, the following:

## Amendment No. 18

### Relates to Removal from Office and Prohibits Nepotism.

| Present Constitution. | Proposed Amendments. |
|---|---|
| Sec. 7. The General Assembly shall, in addition to other penalties, provide for the removal from office of county, city, town and township officers, on conviction of willful, corrupt or fraudulent violation, or neglect of official duty. | Section 7. Laws may be enacted to provide for the removal from office, for cause, of all public officers, not otherwise provided for in this Constitution. |
| (New Section) | Sec. 13. Any public officer or employee of this State or of any political subdivision thereof who shall, by virtue of said office or employment, have the right to name or appoint any person to render service to the State or to any political subdivision thereof, and who shall name or appoint to such service any relative within the fourth degree, either by consanguinity or affinity, shall thereby forfeit his or her office or employment. |

### EXPLANATION.

Section 7, Article XIV is amended to include all officers not subject to impeachment as provided in Article VII. This proposal also provides for the addition of a new section, Number 13, which prohibits public officials from appointing relatives to office.

The form of ballot used in submitting the amendment was as follows:

| ARTICLE XIV.—MISCELLANEOUS PROVISIONS. Amendment 18. | YES |
|---|---|
| To amend Section 7 of Article XIV and to add new Section 13 thereto:—Relates to removal from office and prohibits nepotism. | NO |

The Constitution of Missouri, as it appears in the officially published Revised Statutes of Missouri, 1929, as well as in Missouri Statutes Annotated, page 260, shows Section 7, Article XIV thereof to be as follows: "The General Assembly shall, in addition to other penalties, provide for the removal from office of county, city, town and township officers, on conviction of willful, corrupt or fraudulent violation or neglect of official duty. Laws may be enacted to provide for the removal from office, for cause, of all public officers, not otherwise provided for in this Constitution."

The principal opinion so treats the section, as, indeed, do all of the parties. Was the change wrought by Section 7 of Amendment 18, submitted by the Constitutional Convention of 1922-23, a mere addition, as above indicated, or was it an entirely new section? The amendment mentioned was one of six adopted at the special election referred to. It was pointed out by this court, en banc, in State ex rel. Aquamsi Land Company v. Hostetter, J., 336 Mo. 391, 79 S. W. (2d) 463, that except in one particular instance, none of the amendments submitted at the special election "expressly purported to repeal the particular sections of the Constitution which they were designed to affect." However, it was there stated, "An express provision to that effect was unnecessary under the generally applicable rule thus stated in Sutherland on Statutory Construction (2 Ed.), vol. 1, p. 44; 'The amendment operates to repeal all of the section amended not embraced in the amended form.'"

Even without resort to the Journal of the Constitutional Convention (which unmistakably shows an intention to submit a *substitute* for Sec. 7 of Art. XIV of the Constitution of 1875. See (232) 76.), we think it clear, and accordingly hold that the 1924 amendment had the effect of repealing the former provisions of Section 7 of Article XIV, and substituted a new section in lieu thereof providing as follows: "Laws may be enacted to provide for the removal from office, for cause, of all public officers not otherwise provided for in this Constitution." The promulgation of the result of said special election, and the amendments adopted thereat appearing in Laws 1925, pages 408-413, give support to this view. It will be observed that at page 411 Amendment No. 18 is set out, and Section 7 of Article XIV is shown to consist of only the matter last above set forth. Furthermore, it was so treated in State ex inf. Norman v. Ellis, 325 Mo. 154, 28 S. W. (2d) 363, an opinion of the court en banc. It is manifest that the language of present Section 7—that "Laws *may be* enacted"—is merely permissive, and so it cannot be seriously contended that it amounts to a constitutional mandate to the General Assembly imperatively requiring action on the part of the latter. This is consonant with the holding of the principal opinion in reference to the effect to be given to the use of the words "may" and "shall."

II. The predicate of the charge· of exclusiveness of remedy (by reason of constitutional limitations) having fallen with the change in the organic law, it follows that the question of whether it is beyond the power of the Legislature to interfere with the jurisdiction granted this court by Article VI, Section 3, of the Constitution is not in the case, and a discussion thereof is not necessary to a decision. *Tipton, C. J.,* and *Ellison, J.,* concur.