STATE OF MISSOURI on the information of ROY McKITTRICK, Attorney General, Relator, v. JAMES L. WILLIAMS, Sheriff of Jackson County.—144 S. W. (2d) 98.

Court en Banc, November 9, 1940.

1004

*Roy McKittrick,* Attorney General, *J. E. Taylor* and *Robert L. Hyder,* Assistant Attorneys General, for relator.

*Waldo Edwards* and *J. Francis O'Sullivan* for respondent.

DOUGLAS, J.—This is an original proceeding in *quo warranto* to oust the respondent who is Sheriff of Jackson County on the ground that he had forfeited his office for neglect of duty.

Respondent took office on January 1, 1937, for a term of four years. On May 10, 1939, an information in *quo warranto* was filed in this court charging that violations of the liquor, vice and gambling laws were open and notorious in Jackson County and that respondent willfully and knowingly neglected and refused to prevent and suppress such violations and to enforce such laws. This court appointed Leo H. Johnson, Esquire, of the Newton County Bar, as its special commissioner to hear the evidence and to make and report his findings of fact and conclusions of law. Many hearings were held and numerous witnesses on both sides were heard as is evidenced by the record of 2479 pages. The commissioner found from the evidence that the gambling and liquor laws were openly and notoriously violated both in Kansas City and in rural Jackson County, and there were open violations of the vice laws in Kansas City; that all such violations were common knowledge and that respondent knew or should have known of them; that in Kansas City the police department openly and continuously neglected to enforce such laws; and knowing this, the respondent failed to suppress such violations and failed to enforce such laws. He recommended the ouster of respondent.

Our jurisdiction in such an action as this was settled in State ex inf. McKittrick v. Wymore, 343 Mo. 98, 119 S. W. (2d) 941. We held there the method provided under the statutes (Secs. 11203-11209, R. S. 1929, Ann. Stat., pp. 6144-6146) was not exclusive in removing an officer who has forfeited his office for the causes set out in Sec. 11202, Ann. Stat., p. 6143, and *quo warranto* to this court would lie. However, respondent claims that we have no jurisdiction of this particular proceeding because he is a constitutional officer and because of the constitutional provision creating the office this proceeding is unauthorized. We must therefore first determine the general intent and purpose of the Constitution on this question.

The power to remove public officers is an incident of the sovereign power and is indispensable in obtaining the administration of public affairs for the greatest public good.

The removal of the chief executive officers of the State, to which class have been added the judges, is provided for in the Constitution by impeachment. There, that subject is dealt with in detail. Probably because these chief officers are elected by the people at large the people, through their representatives, have retained unto themselves the processes for their removal. In addition to the specific causes for impeachment, certain restrictions have been placed, from time to time, upon all officers. They must attend personally to their duties, Sec. 18, Art. II; they must not accept a railroad pass, Sec. 24, Art. XII; they must not appoint a relative to office, Sec. 13, Art. XIV.

As to all other public officers, not subject to impeachment, the Legislature is authorized by the Constitution to enact laws for their removal for cause. Section 7, Art. XIV provides: "The General Assembly shall, in addition to other penalties, provide for the removal from office of county, city, town and township officers, on conviction of willful, corrupt or fraudulent violation or neglect of official duty. Laws may be enacted to provide for the removal from office, for cause, of all public officers, not otherwise provided for in this Constitution." Pursuant to this provision the Legislature has enacted the statutes above mentioned. ▮ These expressly except, as so they must, such officers as may be subject to removal by impeachment. Section 11202 states: "Any person elected or appointed to any county, city, town or township office in this state, except such officers as may be subject to removal by impeachment, who shall fail personally to devote his time to the performance of the duties of such office, or who shall be guilty of any willful or fraudulent violation or neglect of any official duty, or who shall knowingly or willfully fail or refuse to do or perform any official act or duty which by law it is his duty to do or perform with respect to the execution or enforcement of the criminal laws of the state, shall thereby forfeit his office, and may be removed therefrom in the manner hereinafter provided."

By specific provision in this section, the failure to enforce the criminal laws of the State constitutes grounds for forfeiture of office. This provision could not be more expressive in its application to the office of sheriff unless by the mention of the office by name. Such mention is specifically made in Sec. 11206 where it is provided that if the proceeding is against the sheriff then the court shall disqualify the sheriff and appoint an elisor. However, as stated above, the manner of removal prescribed in the statute is not exclusive and this court in *quo warranto* may remove for the causes therein stated.

▮ Respondent argues vigorously that these statutes are not applicable in this case because the sheriff is a constitutional officer and can be removed only on the ground provided in the Constitution and any attempt to apply these statutory provisions deprives respondent

of his rights and guaranties under the due process clauses, Fifth and Fouteenth Amendments to the United States Constitution, and Sec. 30, Art. II, as well as under Sec. 10, Art. IX of our Constitution.

The latter section, in part, states: "There shall be elected by the qualified voters in each county on the first Tuesday next following the first Monday in November, A. D. 1908, and thereafter every four years, a sheriff and coroner. They shall serve for four years and until their successors be duly elected and qualified, *unless sooner removed for malfeasance in office*. . . ." (Italics ours.) Under such provision respondent contends that he may be removed on the ground of malfeasance only and that the information charged and the evidence submitted tended to prove nonfeasance only. His position is that he cannot be removed for the statutory cause of nonfeasance. He relies on the well-established rule which we affirm that where the Constitution prescribes the causes for which and the methods by which an officer may be removed, such causes and methods are exclusive and impliedly prohibit the Legislature from adding to the condition or extending the penalty to other cases. [State ex inf. Shartel v. Brunk, 326 Mo. 1181, 34 S. W. (2d) 94.] This rule is not relevant here.

In his insistence that under Sec. 10, Art. IX, supra, a sheriff may be removed for malfeasance only, he asks us to review the history of such constitutional provision. We find a similar section in the Constitution of 1820, Sec. 23, Art. IV, which provided the sheriff and the coroner should serve a term of two years "unless sooner removed for *misdemeanor in office*." Thereafter, in the Constitution of 1865, Sec. 22, Art. V, this phrase was changed to "malfeasance in office." The Legislature of 1865 did not regard malfeasance as the exclusive cause for removal because it expressly provided for forfeiture of the office of sheriff for nonfeasance in failing or refusing to execute any lawful process. [Chap. 203, Secs. 42 and 44, R. S. 1865.] Furthermore it provided for forfeiture of office because of official misdemeanor or misconduct. [Chap. 204, Sec. 23, R. S. 1865.]

Then by the Constitution of 1875 the term "malfeasance in office" was repeated in Sec. 10, Art. IX applying to the sheriff and the coroner. However, it is important to observe the adoption for the first time of Sec. 7, Art. XIV in the following form: "The General Assembly shall, in addition to other penalties, provide for the removal from office of county, city, town and township officers, on conviction of willful, corrupt or fraudulent violation of neglect of official duty." We had this section under consideration in State ex rel. Henson v. Sheppard, 192 Mo. 497, 91 S. W. 477, where we held as follows: "In construing section 7 (Art. XIV), supra, the phrase, 'in addition to other penalties,' is of live significance. ▮ The constitutional mandate is to the effect that the Legislature *shall* provide for the removal from office of any officer convicted of willful, corrupt or fraudulent

violation or neglect of official duty, not that the Legislature shall do nothing more. The contention of relator is that the expression of one thing excludes everything else. In other words, having said that an officer shall be removed on conviction, it follows, says relator, that he cannot be removed or suspended short of conviction, and this under the maxim *expressio unius*. But this view entirely eliminates the important modifying phrase, 'in addition to other penalties.' 'Penalties,' as used above, means 'punishment, fine, forfeiture, deprivation of some office or right for some offense, misconduct, misdemeanor or delinquency.' [State ex rel. v. Walbridge, 119 Mo. infra.] The entire section means that the Legislature must provide for the removal of an officer on conviction, but it leaves the question of other penalties solely within the realm of legislative enactment, and so it has been held. [State ex rel. v. Walbridge, 119 Mo. 1. c. 390, et seq.]'' This decision was approved in State ex inf. McKittrick v. Wymore, supra. It is the constitutional policy of this State to grant the Legislature liberal and extensive powers of amotion.

In 1924 by amendment to the Constitution, the Legislature was further empowered to enact laws "to provide for the removal from office, for cause, of all public officers, not otherwise provided for in this Constitution." Whether this was an addition to or a substitute for the then Sec. 7, Art. XIV, we need not here decide. [See concurring opinion by LEEDY, J., State ex inf. McKittrick v. Wymore, 343 Mo. 98, 119 S. W. (2d) 941, 949, supra.] Under either condition the office of sheriff is included in Sec. 7, Art. XIV.

A sheriff is indeed a "public officer." We hold he is a "county officer" within the meaning of this section. The statements in State ex rel. Beach v. Finn, 4 Mo. App. 347, and State ex rel. Attorney General v. McKee, 69 Mo. 504, to the effect that a sheriff is a state officer are mere *obiter dicta*. In State ex rel. Holmes v. Dillon, 90 Mo. 229, 2 S. W. 417, we held that the words "state officer" as used in the Constitution were intended to refer to such officers whose official duties and functions are co-extensive with the boundaries of the State and were never intended to refer to a sheriff whose functions are confined to his county and who is commonly known and called a county officer. We there distinguished the McKee case, supra. We again ruled that a sheriff is not a state officer in State ex rel. Bender v. Spencer, 91 Mo. 206, and approved the above holding in the Holmes case.

Respondent argues that the amendment does not apply to a sheriff because the amendment is limited to the removal of officers "not otherwise provided for in this Constitution," and that Sec. 10, Art. IX, provides for removal by employing the phrase "unless sooner removed for malfeasance." We overrule this contention. This latter phrase can be but a limitation of the term of office which it modifies. It in no way "provides" for removal. No method of removal is

mentioned. "Not otherwise provided for in this Constitution" refers to the provisions for the causes and method of impeachment. The Legislature has so construed it in Sec. 11202, supra, by excepting from the provisions of that section all officers who are subject to impeachment. We may give weight to a construction by the Legislature. [State ex rel. O'Connor v. Riedel, 329 Mo. 616, 46 S. W. (2d) 131.] How absurd it would be to hold that Sec. 10, Art. IX, means that a sheriff or a coroner could be removed only for malfeasance. If such were the case a sheriff could cause untold confusion and injustice by failing to execute the writs and processes of the court, a coroner could neglect to hold an inquest or, to the danger and disgrace of the community, neglect to bury the dead when the law makes it his duty to do so. Important as they are, there is nothing so sacred about the offices of sheriff or coroner which should except the holders from removal for neglect of duty. The Governor and chief executive officers of the State may be impeached for mere misconduct in office. [Sec. 1, Art. VII.]

It is elementary that in constitutional construction all the provisions bearing upon a particular subject are to be considered together and effect given to the whole. This court has held it to be the policy of this State that officers generally may be removed from office for misconduct in the performance of the duties of the office. [State ex rel. McAllister v. Sanderson, 280 Mo. 258, 217 S. W. 60; State ex inf. McKittrick v. Wymore, 345 Mo. 169, 132 S. W. (2d) 979.]

We rule that the office of sheriff is included within the application of Sec. 7, Art. XIV; that respondent is subject to removal for the causes set out in Sec. 11202; and that the information in this case based on nonfeasance was sufficient and invested this court with jurisdiction. By this proceeding respondent has been indued with his constitutional safeguards. In view of these conclusions it becomes unnecessary to discuss the constitutional defenses.

Respondent also argues that Sec. 10, Art. IX designates malfeasance as a ground for removal and all other grounds are therefore under the doctrine "*expressio unius est exclusio alterius.*" We can let no rule of construction do violence to our fundamental law. In McGrew v. Mo. Pac. Ry. Co., 230 Mo. 496, 132 S. W. 1076, we repeated that the above doctrine may be applied to a constitution only with great caution. The Supreme Court of the United States in discussing the question whether the President could remove an officer except for causes defined in the statutes considered this maxim. That court said that in many instances this maxim was founded upon justifiable reasoning "but should not be accorded controlling weight when to do so would involve the alteration of the universal practice of the government for over a century and the consequent curtailment of the powers of the executive in such an unusual manner." [Shurtleff v. United

States, 189 U. S. 311, and also see Humphrey's Executor v. United States, 295 U. S. 602.] The rule is not applicable in this case.

A further argument of respondent is to the effect that he should not be charged with the failure of law enforcement in Kansas City as charged because the duty to enforce the law there was upon the metropolitan police department. We find from the evidence that while the violations charged were prevalent throughout Jackson County the greater number did take place in Kansas City. But it cannot be successfully asserted that a local police force has supplanted the sheriff in his duties as a peace officer. His is an important office and one of the oldest known to law. Under the common law he was the conservator of the peace within the county, had the safe keeping of the county jail and commanded the *posse comitatus*. One author says that "for a thousand years the sheriff has been the principal conservator of the peace in his county, with full power to command, whenever necessary, the power of the county." [Murfree on Sheriffs.] He has also been referred to as the chief executive officer of his county. By statute (Secs. 11516, 11518, R. S. 1929, Ann. Stat., p. 7435) as well, he is made the conservator of the peace within his county. His duties are described in Farmers' Mut. Fire Assn. v. Hunolt (Mo. App.), 81 S. W. (2d) 977:

"Sheriffs are given power, and it is made their duty, to preserve the peace, arrest and commit to jail all felons, traitors, and other misdoers, to execute all process, and to attend upon courts of record. The powers and duties of the conservator of the peace exercised by the sheriff are not strictly judicial; but he may be said to act as the chief magistrate of his county, wielding the executive power for the preservation of the public peace, and it has been held that the duty of a sheriff in the enforcement of the law implies initiative on his part, and that he must be reasonably alert with respect to possible violations of the law, and is not entitled to wait until they come to his personal knowledge, but must follow up information received from any source."

His authority is county wide. He is not restricted by municipal limits. For better protection and for the enforcement of local ordinance the cities and towns have their police departments or their town marshals. Even the State has its highway patrol. Still the authority of the sheriff with his correlative duty remains. It has become the custom for the sheriff to leave local policing to local enforcement officers but this practice cannot alter his responsibility under the law. Usage cannot alter the law. [United States v. McDaniel, 8 L. Ed. 587.] It is self-evident that a custom or usage repugnant to the express provision of a statute is void. A policeman is an officer whose duties have been, for local convenience, carved out of the old duties of constable, and the constables were always part of the general force at the disposal of the sheriff. There is no division

of authority into those of the sheriff and the police. Each is a conservator of the peace possessing such power as the statutes authorize. [See Vickers on Police Officers.] In every county there are a number of peace officers of varying authority. They and the sheriff must work in harmony. In the larger communities where dense population has increased the hardship of proper law enforcement police departments have developed scientific methods of crime detection and prevention. Larger means and a greater number of men are available to a local police department than to the county sheriff. Methods of rapid communication and transit are provided. Under these circumstances the sheriff may leave local enforcement in local hands, but only so long as reasonable efforts in good faith are made to enforce the law.

The courts have taken cognizance of the development of local enforcement agencies. It has been held, and correctly so, that a sheriff may assume that a city police department will do its duty in enforcing the law and hence will not be guilty of any serious neglect of duty if he gives little attention to police matters in such city. But this rule has a proper qualification. If the sheriff has reason to believe that the police force is neglecting its duty it is his duty to inform himself. And if he knows that the police are ignoring or permitting offenses his duty to prevent and suppress such offenses is the same as it would be if there was no municipality and no police force. The derelictions of other officials cannot excuse his failure to perform his statutory duties. [State ex rel. Thompson v. Reichman, 135 Tenn. 653, 188 S. W. 225.]

Therefore, under the facts of this case the sheriff cannot excuse his neglect of duty in Kansas City by placing the responsibility on the Kansas City Police Department. The evidence shows the police department was permitting, knowingly and without interference, such violations; had done so over a period of time and respondent had knowledge both of such violations and of the willing neglect of police to enforce the law. The excuses now advanced by respondent that he was engaged in other duties, that he had not a sufficient staff for proper enforcement, and that he relied on the advice of his statutory attorney are not sufficient or valid. A public official holds his office *cum onere* with all responsibilities attached. [Commonwealth ex rel. School District v. Tice, 282 Pa. St. 595, 128 Atl. 506.]

█ There was admitted in evidence over the objection of respondent decrees in seven injunction suits to abate liquor nuisances in Kansas City and convictions of various defendants charged with liquor violations in thirty-five cases obtained on pleas of guilty or trial. Under our decision in State ex inf. McKittrick v. Graves, 346 Mo. 990, 144 S. W. (2d) 91, handed down contemporaneously herewith, a plea of guilty constitutes the best evidence of the guilt of the person so pleading, and is certainly proper evidence of law violation.

The other judgments and decrees are proper evidence of the rendition of such verdicts or orders and of their legal effect. They are prima facie evidence of the guilt of the defendants therein named and may also be used, subject to rebuttal, as evidence of law violation. Objection was also made to the admission of some fifty-three newspaper articles about the lawless conditions in Jackson County offered for the purpose of showing notice to respondent. We have discussed this subject in State ex inf. McKittrick v. Graves, supra, a case for the ouster of the prosecuting attorney, and found such newspaper articles properly admissible. We followed our second decision in the Wymore case, 345 Mo. 169, 132 S. W. (2d) 979, in ruling that evidence of the notoriety of an existing fact is admissible to prove that another has knowledge of this fact.

Upon the opening of the hearings before the commissioner, the respondent demanded a trial by jury which the commissioner refused, and respondent complains of this action. Although, under certain circumstances, other states permit jury trials on questions of fact in *quo warranto* proceedings, the rule has long been settled in this State that a respondent is not entitled to a jury trial as a matter of constitutional right in *quo warranto* proceedings. [State ex rel. Attorney General v. Vail, 53 Mo. 97; State ex rel. Norton v. Lupton, 64 Mo. 415; State ex inf. v. Arkansas Lumber Co., 260 Mo. 212, 169 S. W. 145.] Moreover, in some jurisdictions it has been held where the Constitution confers original jurisdiction in *quo warranto* proceedings on the Supreme Court, as it does in this State, a determination by the court alone without the intervention of a jury is intended. [See Annotation, 98 A. L. R. 237.] We think this is sound reasoning and adopt it. In State ex rel. Ewing v. Townsley, 56 Mo. 107, relied on by respondent, a jury was accorded *ex gratia* as pointed out in State ex rel. Norton v. Lupton, supra.

The respondent had a fair and proper trial. He was accorded his legal rights and privileges. We decide that the evidence relevantly and amply supports the finding of our commissioner that respondent has forfeited his office for neglect of official duty. He is guilty of now usurping such office. However, our commissioner also found that respondent's reputation for honesty and integrity was excellent and absolved him from any participation in corrupt influences and practices.

It is ordered that respondent is ousted from the office of Sheriff of Jackson County as of May 10, 1939, and is fined one dollar for the usurpation of such office from said date and is taxed the entire costs of this proceeding. All concur.