492 F.Supp. 455 (1980)
Walter R. OTTEN, Plaintiff,
v.
John SCHICKER et al., Defendants.
No. 80-654C(2).
United States District Court, E. D. Missouri, E. D.
July 2, 1980.
*456 Norman S. London and Lawrence J. Fleming, London, Greenberg & Fleming, St. Louis, Mo., for plaintiff.
Robert H. Dierker, Jr., Asst. City Counselor, Stephen H. Gilmore, Mark H. Neill, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This case is now before the Court on plaintiff's motion for a preliminary injunction. Plaintiff brought this suit pursuant to 42 U.S.C. § 1983 claiming that defendants' regulations which prohibit his political activities violate his constitutional rights.[1] A short hearing was held on this motion on June 5, 1980. The following shall constitute the Court's findings of fact and conclusions of law, as required by Rule 52, Federal Rules of Civil Procedure.
Plaintiff has been a police officer with the City of St. Louis for almost twenty-three years. Defendants Schicker, Hart, Crowe, and Conway constitute the Board of Police Commissioners of the City of St. Louis ("the Board"). Pursuant to Missouri law, the Board is responsible for formulating policies and regulations for the operation of the Police Department. Though the defendant City must fund the Police Department, the Board, an independent administrative agency, has control over it.[2] Defendant Camp is Chief of Police for the City of St. Louis.
On April 21, 1980, plaintiff filed to run in the Democratic primary for election as State Senator from the Third Senatorial District of Missouri. On May 12, 1980, plaintiff was suspended without pay from *457 his position with the Police Department for violation of Rule 7.010A of the Department, which prohibits employees of the Department from running for elective public office. The suspension was based solely on plaintiff's filing for office. Rule 7.010A was promulgated by the Board pursuant to authority vested in it by Missouri law.
Plaintiff claims that the regulation in question is an unconstitutional infringement upon his rights of free speech and association. Where this Court writing on a clean slate, this issue might require extensive discussion and careful consideration and balancing of the competing interests involved. The Supreme Court, however, has resolved this issue.
In United States Civil Service Com'n v. National Ass'n of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), the Supreme Court upheld the validity of the Hatch Act and its accompanying regulations which limit the political activities of federal employees. In the course of that opinion, the Court rejected the very arguments now pressed by plaintiff. The Court recognized the legitimate reasons which exist for curtailing the political activities of civil servants, and found no unconstitutional infringement of First Amendment rights. Quite simply, the Court held that an Act of Congress would unquestionably be valid if, in plain and understandable language, it forbade activities such as becoming a partisan candidate for, or campaigning for, an elective public post. Id., at 556, 93 S.Ct. at 2886.
This holding was reiterated in the companion case of Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). This case involved a state, as opposed to federal, regulation which prohibited political activities on the part of civil servants. The Court there stated, at 616-617, 93 S.Ct. at 2918:
... Under the decision in Letter Carriers, there is no question that § 818 is valid at least insofar as it forbids classified employees from: ... becoming ... candidates for any paid political office; ...
In view of this strong precedent, this Court must reject plaintiff's contention that the regulation in question violates his First Amendment rights. The same concerns which justify the regulations upheld in Letter Carriers and Broadrick are applicable to justify the restrictions imposed upon plaintiff in this case. Magill v. Lynch, 560 F.2d 22 (1st Cir. 1977); Paulos v. Breier, 507 F.2d 1383 (7th Cir. 1974); Gray v. City of Toledo, 323 F.Supp. 1281 (N.D.Ohio 1971). If anything, the desire to maintain a completely and unquestionably unbiased work force is even stronger with respect to policemen than other civil servants.
Likewise, this Court must reject plaintiff's contention that the regulation in question is an unconstitutional interference with the free elective process of the State of Missouri. To a large extent, this claim is merely a restatement of plaintiff's previous argument  by suspending plaintiff and discontinuing his salary, defendants have denied him the resources to run for office. Rewording the claim in this manner does not avoid the fact that the Supreme Court has held regulations such as involved in this case to be constitutional.
To the extent that plaintiff seeks to assert the rights of those who would support him in his campaign, the same result is dictated. The restriction validly imposed on plaintiff is not rendered invalid because of its peripheral effects upon the rights of others. Their right to vote for the candidate of their choice is of no greater weight than plaintiff's rights of free speech and association. Just as the regulation does not impermissibly infringe upon plaintiff's rights, so too it does not impermissibly infringe upon the rights of these other voters. Although not specifically articulated therein, this conclusion must be considered implicit in Letter Carriers, supra. Among the plaintiffs in that case were Republican and Democratic Committees which argued that the Hatch Act impermissibly deterred them from seeking qualified candidates for public office. Id., 413 U.S. at 551-552 n. 3, 93 S.Ct. at 2883-2884 n. 3. In rejecting plaintiffs' attacks upon the Hatch Act, the Supreme *458 Court necessarily rejected this argument also.
Although defendants undoubtedly have the authority, consistent with constitutional guarantees, to protect the apolitical nature of the Department, the regulation in question may not be enforced if impermissibly vague or overbroad, or a denial of Equal Protection of the laws. Although plaintiff asserts in his complaint that the challenged regulation is unconstitutionally vague, it does not appear that he is pressing the issue. In any event, it is obvious that the challenged regulation is "not so vague that `men of common intelligence must necessarily guess at its meaning.' Connally v. General Construction Co., 269 U.S. 385, 391, [46 S.Ct. 126, 127, 70 L.Ed. 322] (1926)." Broadrick v. Oklahoma, supra, 413 U.S. at 607, 93 S.Ct. at 2913. The regulation states, in plain and simple language, that members of the Police Department are prohibited from "becoming a candidate for, or campaigning for, an elective public office." This phrase is not vague.
Plaintiff claims that the phrase in question is unnecessarily overbroad in that it prohibits plaintiff's candidacy without any showing that plaintiff is attempting to further his political interests by using his official position. Plaintiff argues that a much narrower restriction would accomplish the objectives of the regulation. This argument is invalid for several reasons.
First of all, plaintiff ascribes an unnecessarily narrow objective to the regulation. The regulation is aimed at preventing more than the use of a policeman's position to further his political goals. The various goals were recognized in Letter Carriers, supra: Policemen, as well as federal civil service employees, "are expected to enforce the laws and execute the programs of the Government without bias or favoritism for or against any political party or group or member thereof." Letter Carriers, supra 413 U.S. at 565, 93 S.Ct. at 2890. The "Government work force should not be employed to build a powerful, invincible, and perhaps corrupt political machine." Id. Defendants have a legitimate objective in ensuring that advancement in the police department does not depend on political performance, and in ensuring that employees are free from pressure and from tacit or express invitation to vote in a certain way in order to curry favor with their superiors. Id. at 566, 93 S.Ct. at 2890. Finally, defendants have a legitimate interest in preventing not only actual improprieties, but the appearance of impropriety as well. Id. at 565, 93 S.Ct. at 2890.
Plaintiff's assertion that a prohibition against the evils themselves, rather than the mere filing for office, would suffice is insufficient to overcome defendants' legitimate objectives in formulating the instant regulation. Such an argument was rejected summarily by the Supreme Court in Letter Carriers:
... It may be urged that prohibitions against coercion are sufficient protection; but for many years the joint judgment of the Executive and Congress has been that to protect the rights of federal employees with respect to their jobs and political acts and beliefs it is not enough merely to forbid one employee to attempt to influence or coerce another. ... Perhaps Congress at some time will come to a different view of the realities of political life and Government service, but that is its current view of the matter, and we are not now in any position to dispute it. Nor, in our view, does the Constitution forbid it. (footnote omitted). Id. at 566-567, 93 S.Ct. at 2890-2891.
Secondly, although this Court does not question plaintiff's sincerity in his desire to totally insulate his job from his political activities, it is nevertheless true that the evils sought to be eliminated by the regulation are present even in the instant situation. For the Department must avoid even the appearance of impropriety or partiality. Letter Carriers, id. at 565, 93 S.Ct. 2890; Morial v. Judiciary Com'n of State of La., 565 F.2d 295 (5th Cir. 1977). Such an appearance is undoubtedly present in the instant *459 situation.[3] This Court must therefore reject plaintiff's claim that the regulation in question is unconstitutionally overbroad.
Finally, plaintiff argues that the instant regulation denies him equal protection in that it applies only to St. Louis Police Officers. This argument must likewise be rejected. First of all, this regulation applies to all employees of the St. Louis Police Department. The regulation therefore applies to all persons upon whom the Board has authority to impose it. The Board, defendant herein, has created no classification.
Even considered in comparison with other public employees in the State of Missouri, it is apparent that St. Louis Police Officers are not the only persons prohibited from running for public office. Similarly restricted are Kansas City Police Officers, § 84.830 R.S.Mo. (1969), Missouri State Highway Patrolmen, § 43.060 R.S.Mo. (1969), and persons employed pursuant to the State Merit System, § 36.150 R.S.Mo. (1979). Although apparently not all public employees of the State of Missouri or the City of St. Louis are so restricted, "a State can hardly be faulted for attempting to limit the positions upon which such restrictions are placed." Broadrick, supra 413 U.S. at 607 n. 5, 93 S.Ct. at 2913. The State must necessarily "have some leeway in determining which of its employment positions require restrictions on partisan political activity and which may be left unregulated." Id. The instant regulation does not violate plaintiff's right to Equal Protection.
This Court must therefore conclude that plaintiff has shown little chance for success upon the merits. Plaintiff's request for a preliminary injunction will therefore be denied.[4]
NOTES
[1] This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1343.
[2] It is upon this theory that defendant City of St. Louis now moves to dismiss. It is apparent from the applicable statutes that the St. Louis Police Department is under the direction and control of the Board, not the City. See 84.010 R.S.Mo. (1969). The City's motion to dismiss will therefore be granted.
[3] Plaintiff's candidacy, for example, was publicized in the Gendarme, the publication of the St. Louis Police Officers Association, along with the notation that endorsement by the association would just be a formality. Also, plaintiff, as could all policemen, could be assigned to work anywhere in the City. He could easily be assigned to work in an area in which he is actively campaigning for office in his off-duty hours. Both of these situations arguably create conflicts of interest on the part of plaintiff and other officers.
[4] Defendants also argue that the regulation in question is required by the Hatch Act. In view of the disposition above of plaintiff's arguments, this issue need not be reached. This Court would note, however, that were plaintiff's activities violative of the Hatch Act due to the Federal funds received by the Police Department, it is the United States Civil Service Commission which would enforce the Act, not defendants. See 5 U.S.C. § 1501 et seq.