Roger POLLARD, Respondent,

v.

**BOARD OF POLICE COMMISSION-
ERS, et al., Appellants.**
(Two cases)

Nos. 64637, 65300.

Supreme Court of Missouri,
En Banc.

Feb. 15, 1984.

Rehearing Denied March 20, 1984.

J. Emmett Logan, Karl F. Schmidt, Manfred Maier, Kansas City, for appellants.

Gerald H. Rosen, Richard H. Anton, Kansas City, for respondent.

BLACKMAR, Judge.

The respondent, Roger Pollard, was a sergeant in the Kansas City, Missouri Police Department. On July 5, 1982 he contributed $1,000, out of his own ample funds, to a political committee formed to promote the candidacy of John Carnes for nomination in a party primary for Representative in Congress from Missouri's Fifth District. Pollard's contribution was not solicited by or paid to a member of the Police Department, and was not made on public premises or while he was in uniform. The contribution was reported to the Missouri Secretary of State as required by law[1] and was the subject of newspaper comment.

When news of Pollard's contribution came to the attention of his superiors in the police department, steps were taken to terminate his employment pursuant to the following portions of § 84.830, RSMo 1978.

1. * * * No officer or employee in the service of said police department shall directly or indirectly give, pay, lend, or contribute any part of his salary or compensation or any money or other valuable thing to any person on account of, or to be applied to, the promotion of any political party, political club, or any political purpose whatever.

7. Any officer or any employee of the police department of such cities who shall be found by the board to have violated any of the provisions of this section shall be discharged forthwith from said service. It shall be the duty of the chief of police to prefer charges against any such offending person at once. . . .

Pollard filed suit under 42 U.S.C. § 1983 seeking an injunction against his termination, and also declaratory relief, claiming (i) that § 84.830 could not be enforced with regard to federal campaigns because the field had been preempted by certain federal legislation, (ii) that prohibition of political contributions by police officers violated his first amendment rights, and (iii) that § 84.830 deprived persons in his position of the equal protection of the laws.

The appellant Board of Police Commissioners introduced substantial evidence about the circumstances leading to the adoption of the statute under challenge. In 1932 this Court held that the existing statutes providing for state control of the Kansas City Police Department were unconstitutional. *State ex rel. Field v. Smith*, 329 Mo. 1019, 49 S.W.2d 74 (banc 1932). After control reverted to the city the police department became heavily politicized. Policemen who belonged to the party out of power were discharged. Those who remained, and those newly hired, were obliged to profess adherence to and to contribute a portion of their salaries to the support of the dominant political party. There followed substantial discoveries of corruption touching not only the police department but the entire governmental structure of Kansas City and Jackson County.[2]

---

1. Section 130.086, RSMo 1978, provides that a candidate for elective federal office shall be deemed to have fully complied with Missouri's Campaign Finance Disclosure Laws (Chapter 130, RSMo 1978) if he files copies of all elective reports required by federal law with the Missouri Secretary of State.

2. *See* State ex inf. *Taylor v. American Insurance Co.,* 355 Mo. 1053, 200 S.W.2d 1 (banc 1946);

State ex inf. *McKittrick v. Graves,* 346 Mo. 990, 144 S.W.2d 91 (banc 1940); State ex inf. *McKittrick v. Williams,* 346 Mo. 1003, 144 S.W.2d 98 (banc 1940); and *United States v. Pendergast,* 28 F.Supp. 601 (W.D.Mo.1939) for a discussion of the then existing political conditions in the Kansas City and Jackson County governmental structures.

The predecessor of § 84.830 was enacted in 1939 as a part of the act returning the Kansas City Police Department to state control by placing it under the direction of a board consisting of the mayor and four commissioners appointed by the governor. Laws of Missouri, 1939 p. 545. The statute was enlarged in 1943, when the provision now before us was added.[3] The evidence showed that compulsory political contributions from public employees (known colloquially as "the lug")[4] were important to a scheme of political control.

■ The appellants sought to demonstrate by evidence and argument that the challenged portion of the statute was designed to protect police officers and the public from political impaction of the law enforcement machinery. The law seeks to assure persons aspiring to careers in law enforcement that they are not obliged to make public display of political affiliation or defer to the wishes of political dignitaries in order to guarantee retention and promotion, and that they may have the full benefit of their often meager compensation undiminished by the lug. The statute additionally serves to proclaim that police protection will be available to the public, free from political overtones, and that the police will deal impartially with all who give them concern. The legislature may have had the further thought that ranking police officers might function as political power brokers if they could freely induce contributions from their subordinates. All of these reasons are matters of substantial state interest and concern. We of course are not concerned with the wisdom of the legislation, and the factual background is appropriate only to demonstrate the considerations which might have influenced the legislature.

The trial judge, although recognizing that there is "a vital state interest in eliminating corruption from the police department, in eliminating political interference," nevertheless held that the area had been preempted by federal legislation, insofar as federal elections are involved, and that the statute deprived Pollard of first amendment rights. Reinstatement with back pay was ordered along with attorneys' fees pursuant to 42 U.S.C. § 1988. The judge analyzed the issues and stated his conclusions in a thoughtful memorandum opinion, which we have considered carefully. We nevertheless disagree with his conclusions and reverse the judgments.[5]

### I. Preemption

The trial court found preemption in the wording of 2 U.S.C. § 453, reading as follows:

> The provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office.

2 U.S.C. § 453 assumed its present form in 1974, as a part of a bill amending a 1971 enactment known as the "Federal Election Campaign Act of 1971."[6]

The 1971 statute expressed a purpose as follows:

> To promote fair practices in the conduct of election campaigns for Federal political offices ...

The statute contained four titles, covering subject matter as follows: (1) campaign communications, treating of relations between political campaigns and the media;

---

**3.** Laws of Mo.1943, p. 727.

Only a portion of § 84.830, RSMo 1978 is material to this case. The statute prohibits a variety of activities, including solicitation of contributions by and from police officers, solicitation on police premises, retaliation against those who fail to contribute, and other restrictions designed to insulate the police department from political influence.

**4.** *Lug*, "[M]oney exacted by politicians ..." *Dictionary of American Slang*, (Crowell, 1967).

The winged steeds guarding the south entrance to Kansas City's imposing City Hall, completed in 1937, were popularly christened "Cut" and "Lug" as soon as they were set in concrete.

**5.** The writer has made use of research and sometimes of phraseology employed by Judge Billings in an opinion circulated at an earlier stage.

**6.** Pub.L. No. 92–225, 86 Stat. 3–20 (codified at 2 U.S.C. §§ 431–54 (Supp. II 1972)).

(2) amendments to the Criminal Code, Title 18, U.S.C.; (3) disclosure of federal campaign funds; and (4) "General Provisions," including in Section 403, then codified as 2 U.S.C. § 453, a disclaimer of federal preemption. None of the provisions had the least relationship to the protection of the public service from political influences.

The purpose of the 1974 federal statute[7] is expressed as follows:

> To impose overall limitations on campaign expenditures and political contributions; to provide that each candidate for Federal office shall designate a principal campaign committee; to provide for a single reporting responsibility with respect to receipts and expenditures by certain political committees; to change the times for the filing of reports regarding campaign expenditures and political contributions; to provide for public financing of Presidential nominating conventions and Presidential primary elections; and for other purposes.

Only Titles 2 and 3 of the 1974 statute are amendatory of the 1971 statute. The 1974 act amends the corresponding section of the 1971 act to provide for express preemption, in the language set out above.

Even if a reader of the bare language might have some question as to the scope of the express preemption, the legislative history shows clearly that Congress did *not* intend the preemption language of § 453 to annul state little Hatch Acts, and other state laws, such as § 84.830, having similar incidence and purpose. The overwhelming concern was revision of the Federal Election Campaign Act of 1971. The legislative history makes it clear that 2 U.S.C. § 453 was intended only to preempt the limited field of statutes imposing restrictions on candidates for federal office and their campaign committees. The Conference Committee explained that purpose of § 453, as follows:

> It is clear that the Federal Law occupies the field with respect to reporting and disclosure of political contributions to and expenditures by Federal candidates and political committees, *but does not affect State laws as to the manner of qualifying as a candidate, or the dates and places of elections.*

S.Conf.Rep. No. 1237, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 5587, 5618, 5668 (emphasis added).

The Conference Committee also noted that the inclusion of amendments to the federal Hatch Act in the 1974 amendatory act was not an expression of a desire to preempt state laws in that field of concern. The report stated:

> It is the intent of the conferees that any State law regulating the political activities of State and local officers and employees is *not preempted or superseded* by the amendments to title 5, United States Code, made by this legislation.

*Id.* at 5669 (emphasis added). Similarly, the House Report states that "[t]he regulation of political activities of State and local employees would be left largely to the States." H.Rep. No. 1239 93rd Cong., 2d Sess. 11, *reprinted in* FEC, *The Legislative History of the 1974 Amendments to the Federal Election Campaign Act,* at 1092.

An examination of the Senate debate on the 1974 amendatory act further emphasizes that, by including amendments to the federal Hatch Act in the bill, the legislature did not intend to preempt state laws regulating the political activities of state and local employees in federal elections. The following exchange between Senator Stevens and Senator Cannon, the floor manager of the bill, exemplifies this point:

> MR. STEVENS: Mr. President, just 1 minute. I should like to clarify something, if I may, with the manager of the bill.
>
> A provision of this bill amends section 1502 of title 5 relating to the activity of State or local employees in Federal campaigns. Specifically, it takes out subsection (a)(3), which prohibits a State or local officer or employee from taking an active part in political management or

---

**7.** Pub.L. No. 93–443, 88 Stat. 1263–1304 (codified as amended at 2 U.S.C. §§ 431–55 (1976)).

political campaigns, and substitutes for that a prohibition from being a candidate for Federal office.

*It is my understanding,* and I should like to ask the manager of the bill, my friend from Nevada (Mr. Cannon), if he agrees that this means *that State laws which prohibit a State employee, or local laws which prohibit a local employee, from engaging in Federal campaign activities and Federal campaigns are still valid?* ...

I think it is quite important, because *many of our States have the so-called little Hatch Act, and it was not our intent to repeal those "little Hatch Acts," or to modify them, but to take it out of the Federal law so that Federal law does not prohibit those activities, leaving it up to the State to do so.*

MR. CANNON: The Senator is *absolutely correct.* Section 401 of the House amendment amended section 1502 of title 5, U.S.Code, relating to influencing elections, taking part in political campaigns, prohibitions, and exceptions, to provide that State and local officers and employees may take an active part in political management and in political campaigns, except that they may not be candidates for elective office.

The conference substitute is the same as the House amendment. *It was the intent of the conferees that any State law regulating the political activity of State or local officers or employees is not preempted,* but superseded [sic].[8] We did want to make it clear that if a State has not prohibited those kinds of activities, it would be permissible in Federal elections. . . .

MR. STEVENS: *It is up to the State to determine the extent to which they (public employees) may participate in Federal elections?*

MR. CANNON: *The Senator is right. The States make that determination.*

120 Cong.Rec. S34386 (1974) (emphasis added).

Similarly, a summary of the House Bill prepared by the Center for Public Financing of Elections, inserted into the record during the House floor debates on the Conference Report by Congressman Young of Georgia, noted that the bill "[r]emoves Hatch Act restrictions on voluntary activities by State and local employees in federal campaigns, *if not otherwise prohibited by State law.*" 120 Cong.Rec. 35145 (1974) (emphasis added).

The value of the legislative history just discussed is not diminished simply because the immediate discussion focused on amendments to Title 5 of the United States Code, while the regulation of contributions and the language of preemption are codified in Title 2. The 1974 amendatory act modified provisions of Titles 2, 5, 18, 26 and 47. It is highly unlikely that the debaters mentally sorted the several provisions of the bill before them according to title. The debates help us in showing what Congress was trying to do and what it was not trying to do.

■ It is apparent from the foregoing that Congress did not intend, in enacting § 453, to preempt a broad field of state law. The legislative history, rather, reveals a manifest Congressional purpose of not preempting state laws regulating the political activities of state or local public employees, whether or not related to federal elections. The amendatory act of 1974 preempts the field only with respect to candidates and their campaign committees. We conclude, therefore, that § 84.830, RSMo 1978, is not a law "with respect to election to federal office," within the scope of § 453.

## II. First Amendment

The trial court also held that the respondent had a first amendment right to make the contribution in issue. Numerous cases, decided over the years, hold that political

---

**8.** The phrase, "but superseded" seems to be inconsistent with the context and undoubtedly should read "or superseded."

activities of public servants may be substantially restricted, even though like activities on the part of private citizens would be strongly protected by the first amendment.

■ The case of *McAuliffe v. Mayor of New Bedford*, 155 Mass. 216, 29 N.E. 517 (1892) dealt with the termination of a police officer for violation of department regulations by membership in a party committee, and also by soliciting political contributions. Justice Oliver Wendell Holmes expressed himself with his usual eloquence, as follows:

> The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. There are few employments for hire in which the servant does not agree to suspend his constitutional rights of free speech as well as of idleness by the implied terms of his contract. The servant cannot complain, as he takes the employment on the terms which are offered him. On the same principle the city may impose any reasonable condition upon holding offices within its control. . . .

The venerable jurist undoubtedly overwrote to the extent that his opinion suggests that public employees may be disciplined if they simply "talk politics," but his words nevertheless illustrate an important point. The activities involved in the case before him were of a kind which are clearly subject to regulation, as the citations below demonstrate, and his lesson remains valuable in demonstrating that public employees may appropriately be subjected to special regulations covering political activities.

■ Limitations on campaign contributions concededly involve substantial first amendment rights. These rights comprehend both freedom of association and freedom of expression. *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Section 84.830 bans all political campaign contributions and prevents the "symbolic

expression of support evidenced by a contribution." 424 U.S. at 21, 96 S.Ct. at 635.

■ The United States Supreme Court has recognized that the government's interest in regulating both the conduct and speech of its employees differs significantly from its interest in regulating those activities of the citizenry in general. *United Public Workers of America v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 564, 93 S.Ct. 2880, 2890, 37 L.Ed.2d 796 (1973); *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). This governmental interest is even stronger, if anything, in its application to policemen as compared to other government employees.[9]

■ Federal, state and local governments have the right to place restrictions on the political conduct of their employees when "such restrictions serve valid and important state interests." *Broadrick v. Oklahoma*, 413 U.S. 601, 606, 93 S.Ct. 2908, 2912, 37 L.Ed.2d 830 (1973). The goal is to balance the interest of the employee as a citizen, in exercising first amendment rights, and the interest of the government, as an employer, in promoting the efficiency and impartiality of public services. *Pickering v. Board of Education*, 391 U.S. at 568, 88 S.Ct. at 1734. The important governmental interests present in the instant case are described in the introductory portion of this opinion.

*Buckley v. Valeo, supra*, after making it clear that political contributions and expenditures are within the protection of the first amendment, went on to sustain substantial restrictions. The Court upheld very strict limits on individual contributions, even though the limitations would necessarily preclude affluent persons from using their means as fully as they might like in the promotion of favored political

---

**9.** *Otten v. Schicker*, 492 F.Supp. 455, 457 (E.D. Mo.1980), *aff'd*, 655 F.2d 142 (8th Cir.1981). *See also* Finck, *Nonpartisan Speech in the Police Department: The Aftermath of Pickering*, 7 Has-

tings Const.L.Q. 1001, 1011–14 (1980); Note, *The Policeman: Must He Be A Second-Class Citizen With Regard To His First Amendment Rights?* 46 N.Y.U.L.Rev. 536, 537–39 (1971).

causes. The opinion observed that a restriction on contributions is much less intrusive than a restriction on the rights of association, expression and assembly, which, insofar as public employees are concerned, are concededly subject to substantial limitation.

■ We of course recognize the state's burden of establishing, when rights protected by the first amendment are restricted in the interest of other public purposes, that the means employed are the least restrictive appropriate to the task.[10] The legislature well might have believed, however, that any of the limitations on the statute suggested by the respondent or by the trial court would frustrate its purpose.

It is suggested that a prohibition on all political contributions by city police officers is more restrictive than is necessary to promote the important state interests involved, while a prohibition limited to local campaigns, or to state and local campaigns, might stand. The legislature would have good reason to think that a prohibition which did not extend to federal candidates and federal elections would be futile. The two major parties operate on a national basis and function in federal, state and local contests. *See* dissenting opinion of Justice Powell in *Branti v. Finkel*, 445 U.S. 507, 521, 100 S.Ct. 1287, 1296, 63 L.Ed.2d 574 (1980). Candidates at all three levels run in the August primary and in the November general elections. A contribution to a congressional candidate well might benefit the local politicians who have made common cause with that candidate. The primary, moreover, is an integral part of the electoral process. *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); *Smith v. Allwright*, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, (1944).

Only scanty authority is cited for the suggestion that a limitation on contributions to national campaigns goes too far.

*Bruno v. Garsaud*, 594 F.2d 1062, 1064 (5th Cir.1979), contains no analysis and purest dicta in its questioning of the validity of a prohibition against contributions to national political causes by employees of local governments. The opinion complained of the inadequacy of the record before the court, whereas the present record is quite complete on the need for regulation. *Wachsman v. City of Dallas*, 704 F.2d 160 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983) dealt with a prohibition on contributions for city council races only, and so there was no occasion to express a conclusion on the issues now before us. The court simply explained why the *Bruno* dictum did not apply. These cases do not shake our conclusion.

■ The interest of the State of Missouri in regulating contributions by police officers to national candidates is all the stronger insofar as the Kansas City Police Department is concerned because the department has been substantially removed from local control and constituted an instrumentality of the state by the legislation of which § 84.830 is a part. *See State ex rel. Spink v. Kemp*, 365 Mo. 368, 283 S.W.2d 502 (banc 1955). State and national politics have a very close relationship.

■ The trial judge found that the statute is unconstitutionally overbroad in that it restricts activities relating to "nonpartisan" elections as well as partisan ones. There is ample precedent for regulating the political activities of public employees in elections in which candidates are elected, and which are nonpartisan only in the sense that party labels do not appear on the ballot. *Wachsman v. City of Dallas*, *supra; Magill v. Lynch*, 560 F.2d 22 (1st Cir.1977). Parties may play substantial roles in elections from which their labels are barred. We take judicial notice that

---

**10.** *See Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). *See also NAACP v. Alabama*, 377 U.S. 288, 307–08, 84 S.Ct. 1302, 1313–14, 12 L.Ed.2d 325 (1964); *Louisiana ex rel. Gremillion v. NAACP*, 366 U.S. 293, 81 S.Ct. 1333, 6 L.Ed.2d 301 (1961); *Talley v.* *California*, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960); *American Communications Association v. Douds*, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950); *Schneider v. State*, 308 U.S. 147, 161–65, 60 S.Ct. 146, 150–52, 84 L.Ed. 155 (1939).

elections under Kansas City's Charter,[11] which has been in effect since 1926, are "nonpartisan," and that the problems described in evidence arose while this charter was in operation. The statute may properly be applied to all elections at which candidates stand for office.

■■■■ In determining claims of overbreadth, our construction of the statute is definitive and we are obliged to give it a construction which will render it valid, if possible. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); *Elder v. Rampton,* 413 U.S. 902, 93 S.Ct. 3062, 37 L.Ed.2d 1020 (1973); *Mining v. Wheeler,* 378 F.Supp. 1115 (W.D.Mo. 1974). The statutory language of "political party, political club, or any political purpose whatsoever," with construction aided by the familiar maxims of *ejusdem generis*[12] and *noscitur a sociis,*[13] bespeaks elections at which candidates stand for public office. The respondent's conduct is appropriately regulated, as we have held, and the statute does not cast a shadow on the lawfulness of conduct of others which is beyond the scope of regulation.

■■■■ Least substantial of all is the suggestion that the total ban on political contribution is more restrictive than necessary, and that a limitation on the amounts would sufficiently serve the legislature's purpose. The modest contributor makes a public record and a public demonstration of support. *Buckley v. Valeo,* 424 U.S. 20–21, 96 S.Ct. 635. The legislature could properly conclude that this is the very demonstration a police officer should not make. With the large number of officers on a metropolitan police force, moreover, the aggrega-

tion of small donations could produce a substantial sum. There was reason for the legislature to conclude that nothing short of a total ban would respond to the evils shown by the evidence.

The cases furnish ample justification for regulations against police officers serving on political committees, working at the polls, raising political funds, running for public office, and engaging in similar activities designed to promote political causes and to advance the fortunes of candidates. A total ban on political contributions is a restriction of the same nature, and undoubtedly less intrusive than some regulations which have been consistently sustained. *See Buckley v. Valeo,* 424 U.S. at 20, 96 S.Ct. at 635.

■■■■ The Supreme Court has used varying language in expostulating on the public interest which must be shown to justify limitations on rights which are within the aura of the first amendment's protection. *Buckley v. Valeo, supra,* refers at page 64, 96 S.Ct. at page 656 to "exacting constitutional scrutiny," and at other places to "weighty interests" and "substantial governmental interests." *Id.* at 29, 68, 96 S.Ct. at 640, 658. *Broaderick v. Oklahoma, supra,* speaks 413 U.S. at pages 611–12, 93 S.Ct. at page 2915 of "compelling needs of society." *Letter Carriers, supra,* 413 U.S. at page 564, 93 S.Ct. at page 2890, mentions "important interests." These are the decisions we deem most supportive of our conclusion. Other recent cases use the phrase "compelling government interest." *See Press-Enterprise Corporation v. Superior Court of California,* —— U.S. ——, ——, 104 S.Ct. 819, 824, 78 L.Ed.2d 629

---

**11.** Our Court can take judicial notice of the provisions of the Kansas City home rule charter. Mo. Const. art. VI, § 19. *See State ex rel. Voss v. Davis,* 418 S.W.2d 163, 172 (Mo.1967); *Nastasio v. Cinnamon,* 295 S.W.2d 117, 120 (Mo. 1956).

**12.** The rule of *ejusdem generis,* an aid to statutory construction problems, suggests "that where general words follow a specific enumeration of person or things, the general words should be limited to persons or things similar to those specifically enumerated." *United States v. Turk-*

ette, 452 U.S. 576, 581, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981), *citing* 2A Sands, *Sutherland on Statutory Construction* § 47.17 (4th ed. 1973).

**13.** "The maxim *noscitur a sociis,* that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth ..." in statutory construction. *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961).

(1984); *Brown v. Socialist Workers '74 Campaign Committee,* 459 U.S. 87, 103 S.Ct. 416, 420, 74 L.Ed.2d 250 (1982). We find no discussion which is particularly helpful in showing how the differences in phraseology just described might be quantified, but do not hesitate to say that the interest of the state in protecting a metropolitan police department from political domination and influence is substantial, significant, important and compelling. The quotation in Judge Donnelly's opinion well analyzes the interests involved, and the need for regulation to protect these interests is well developed in the evidence.

*Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), cited by the respondent and in the dissent, and the companion case of *Branti v. Finkel, supra,* are completely distinguishable because in each case the limitation on freedom of political association of the discharged employees was not designed to serve any public interest. The interest, rather, was personal to the public official who, on assuming office, undertook to terminate subordinates simply because they adhered to the opposing political party.

### III.

■■■ It is finally alleged in the petition that § 84.830 violates the Equal Protection Clause of the United States Constitution. This argument was not relied on by the trial court or briefed on appeal. It is also lacking in merit. Statutes analogous to the one here involved have withstood similar attacks. *See, Otten v. Schicker,* 655 F.2d 142, 146 (8th Cir.1981), *aff'ing,* 492 F.Supp. 455, 459 (E.D.Mo.1980).

The judgments are reversed and the cases are remanded with directions to dismiss the petition.

RENDLEN, C.J., and HIGGINS, GUNN, and BILLINGS, JJ., concur.

WELLIVER and DONNELLY, JJ., dissent in separate opinions filed.

WELLIVER, Judge, dissenting.

I respectfully dissent. After examining the legislative history of the Federal Election Campaign Act of 1974, I believe it is questionable whether Congress intended that Act to preempt all state and local enactments regulating the conduct of state and local government employees in the campaigns of federal elective officers. Nevertheless, I believe we should affirm the judgment of the trial court because § 84.830, RSMo 1978, as applied in this case, impinges on rights protected by the First Amendment.

The legislature enacted § 84.830 as a means to eliminate the involvement of Kansas City police officials in campaigns for public office and to prevent the abuses of power which had occurred during an earlier turbulent period of that city's history. While designed to serve meritorious purposes, it is manifest that the statute also implicates the rights of expression and association protected by the First Amendment. *See Buckley v. Valeo,* 424 U.S. 1, 21–25, 96 S.Ct. 612, 635–37, 46 L.Ed.2d 659 (1976). Whether the statute constitutes a permissible infringement on these First Amendment rights is determined by weighing the magnitude of the state's interest in regulating respondent's conduct. The Fifth Circuit recently articulated a useful method of analysis:

> The standard to be applied ... is a function of the severity of impairment of first amendment interests. As the burden comes closer to impairing core first amendment values, ... or impairs some given first amendment value more substantially, ... the requisite closeness of fit of means and end increases accordingly.... [R]estrictions on the partisan political activity of public employees and officers, where such activity contains substantial nonspeech elements, ... are constitutionally permissible if justified by a reasonable ·necessity ... to burden those activities to achieve a *compelling public objective.*

*Wachsmann v. City of Dallas,* 704 F.2d 160 (5th Cir.), *cert. denied,* —— U.S. ——,

104 S.Ct. 537, 78 L.Ed.2d 717 (1983), *quoting Morial v. Judiciary Commission,* 565 F.2d 295, 300 (5th Cir.1977) (en banc), *cert. denied,* 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978) (emphasis added).

The United States Supreme Court in *Buckley v. Valeo* recognized that the First Amendment permits reasonable limitations on the right to contribute to election campaigns. *Wachsmann v. City of Dallas* provides an example of a regulation which permissibly restricts a government employee's right to make a campaign contribution. The Fifth Circuit there sustained a municipal ordinance prohibiting contributions by city employees to candidates for the city council. The Court identified several special circumstances present in that case that tended to justify the prohibition. First the ordinance proscribed contributions only to a limited category of elective offices. Second, these offices had a close nexus to the government employees affected by the ordinance. Finally, the ordinance left employees with the opportunity to exercise their right to contribute in other elections. The court observed: "But here, while it is absolute, the ban is on contributions in a particular type of election, not all elections. It is directly tied to the City's interest." 704 F.2d at 174. The Fifth Circuit expressed a similar view in *Bruno v. Garsaud,* 594 F.2d 1062, 1064 (5th Cir.1979).

In contrast to the ordinance in *Wachsmann,* § 84.830 would appear to prohibit contributions in all campaigns, be they for local, state or federal office. For this reason, I believe we must hold the statute unconstitutional as applied in this case unless the state demonstrates that it is necessary for achieving compelling governmental objectives. In my opinion, the state's interest may be sufficiently compelling to warrant a prohibition on contributions to candidates for state office, as well as candidates for city office. But this is not the question before us. Our concern here is finding a state interest in totally prohibiting campaign contributions to candidates for federal office. I fail to see what deleterious effects would result from a contribution to a candidate for Congress by a Kansas City police officer or, for that matter, by a judge of this Court. The potential for abuses of the kind § 84.830 was designed to correct simply is not that great in the case of candidates for federal office. Therefore, I believe the state's interest does not rise to the level of being "compelling" with respect to such campaigns. Given the protected nature of the rights at stake in this case, *Buckley v. Valeo, supra,* I believe the principal opinion accords the legislature far too much discretion in determining the means to be used to accomplish its purpose. For the foregoing reasons, I too would hold § 84.830, insofar as it totally prohibits contributions to a candidate for federal office, unconstitutional as applied.

DONNELLY, Judge, dissenting.

This is an appeal from an order reinstating respondent as an officer of the Kansas City, Missouri Police Department. While an officer in the Kansas City Police Department, respondent made a $1,000 contribution to the campaign committee of John Carnes, a candidate for election to the United States House of Representatives. Respondent was charged with violating § 84.830, RSMo 1978, which prohibits any Kansas City police officer from contributing to any political party, club or purpose:

"No officer or employee in the service of said police department shall directly or indirectly give, pay, lend, or contribute any part of his salary or compensation or any money or other valuable thing to any person on account of, or to be applied to, the promotion of any political party, political club, or any political purpose whatever."

After affording respondent a hearing on the matter, the Board of Police Commissioners ordered him discharged from the police force. Respondent petitioned the Circuit Court of Jackson County for injunctive and declaratory relief. Respondent challenged the constitutionality of § 84.830, alleging it violates the First Amendment of the United States Constitution in that it deprives him of freedom of expression and association and freedom to partici-

pate in the political process. The trial court raised *sua sponte* the issue of whether the Federal Election Campaign Act preempts § 84.830.

The essential question on appeal is: May § 84.830, RSMo 1978, be used to deprive a Kansas City police officer of his right to make a campaign contribution to a candidate for election to the United States House of Representatives?

*The Preemption Issue:* On November 1, 1983, the United States Supreme Court addressed the question of preemption in *Aloha Airlines, Inc. v. Director of Taxation of Hawaii*, —— U.S. ——, 104 S.Ct. 291, 78 L.Ed.2d 10 (1983). The teaching of *Aloha* is that when this Court is confronted with a federal statute which unambiguously preempts state law, it may not "avoid this direct conflict by looking beyond the language of [the federal statute] to Congress's purpose in enacting the statute."

In my view, preemption *as to election to Federal office* must be found from the explicit language of 2 U.S.C. § 453, which reads as follows:

> "The provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office."

This Court cannot create an ambiguity where none exists. The proscriptions of § 84.830 may not be imposed in this case.

*The Constitutional Issue:* It is well settled that a limitation on campaign contributions involves substantial First Amendment rights. *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In this constitutionally sensitive area, a State must justify challenged applications of its laws. In *Elrod v. Burns*, 427 U.S. 347, 361, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547 (1976), the United States Supreme Court addressed the question whether a State may force a public employee to relinquish his right to political association as the price of holding a public job, and articulated the test which should be applied on this appeal: "In short, if conditioning the retention of public employment on [non-participation in the politi-cal process] is to survive constitutional challenge, it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights."

The "vital government end" asserted by appellants in their brief is as follows:

> "When the political neutrality of a police department is compromised, there is a tendency for control of the department to be thereby transferred from the Chief of Police to the politicians in power at the time. * * * The public interest is jeopardized by the risk that this politicalization will adversely affect the goals of law enforcement officials, * * * and by the harm to the community engendered by the diminished reputation of its police department. * * * The department itself suffers, because this politicalization is inimical to the maintenance of a merit system of hiring and promotion, * * * and makes employment on the department less attractive to qualified recruits, * * * and because the department thereby loses the confidence and trust of the public. Permitting partisan political contributions can also have a debilitating effect on the morale, discipline, and espirit de corps of the department.

> "The performance of the individual officer is adversely affected by his participation in partisan politics, because he fears persistent conflicts between the unbiased discharge of his official duties and the partisan interests of the politicians to whom he has pledged support. * * * These conflicts are particularly dangerous in light of a police officer's direct contact with the electorate and the electoral process.

> "Finally, where as in this case, the officer who makes a public partisan political contribution functions in a supervisory capacity, the contribution has a chilling affect on the First Amendment rights of those officers under his command who are of a different political persuasion. * * *."

In my view, no state interests suggested are sufficient to justify the restriction on constitutional rights challenged on this appeal. We need not paint with a broad brush in this case. *See Liverpool, New York and Philadelphia S.S. Co. v. Commissioners of Emigration*, 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885). We need not hold § 84.830 unconstitutional. We can "tailor and apply" § 84.830 "in a manner that avoids" such a result. *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980). I would hold *only* that § 84.830 may not be used to deprive respondent of his right to make a contribution to a candidate for election to the United States House of Representatives. Section 84.830 would remain a viable constraint on political activity not related to election to Federal office.

I dissent.